GULLY, STATE TAX COLLECTOR, *v.* GULF COAST INDUSTRIAL LOAN CO.

(Division B. Jan. 8, 1934.)

[151 So. 754. No. 30958.]

Wadlington, Corban & Grant, of Biloxi, for appellant.

**J. C. Ross,** of Gulfport, for appellee.

**Anderson, J.,** delivered the opinion of the court.

This is an appeal by the state tax collector from a judgment of the circuit court of Harrison county affirming orders of the board of supervisors of that county and of the municipal authorities of the city of Gulfport vacating the back assessment for taxation of solvent credits of appellee made by the assessor of the county and of the municipality at the instance of the state tax collector.

In 1930 appellee held and owned solvent evidences of indebtedness due it in the sum of forty-one thousand nine hundred sixty dollars, in 1931 in the sum of forty-six thousand five hundred eighteen dollars, and in 1932 in the sum of fifty-three thousand four hundred seventy-five dollars, on which it was paying no ad valorem taxes to either the state, county, or municipality. At the instance of appellant the county assessor of Harrison county back assessed appellee for those years for the amounts named, and the assessor of the city of Gulfport assessed appellee for those amounts for the same years. On objection by appellee before the board of supervisors and before the municipal authorities of the city of Gulfport, the assessments were vacated. From those orders appellant appealed to the circuit court where the orders were affirmed. In the circuit court the two assessments were consolidated and heard together.

Appellee claimed, and the circuit court held, that it was entitled to exemption from taxation under subdivision (v) of section 3108, Code of 1930. That statute provides, among other things, that all notes and evidences of indebtedness bearing a rate of interest not greater than six per cent. per annum, and all money loaned at a rate of interest not exceeding six per cent. per annum shall be exempt from taxation.

The claimant of exemption from taxation has the burden of showing clearly the right thereto; all reasonable doubts must be resolved against the claimant. The claimant must show plainly that he comes within the statute. Leaf Hotel Corp. v. City of Hattiesburg (Miss.), 150 So. 779; Gulfport Building & Loan Ass'n v. City of Gulfport, 155 Miss. 498, 124 So. 658; Board of Supervisors v. Merck & Alston, 153 Miss. 346, 120 So. 839; Barnes, Sheriff, v. Jones, 139 Miss. 675, 103 So. 773, 43 A. L. R. 673; Adams County v. National Box Co., 125 Miss. 598, 88 So. 168; Currie-Finch Brick & Lumber Co. v. Miller, 123 Miss. 850, 86 So. 579; New Standard Club v. McGowen, 111

Miss. 92, 71 So. 289, Ann. Cas. 1918E, 274; Greenville Ice & Coal Co. v. City of Greenville, 69 Miss. 86, 10 So. 574.

The material facts in the case are undisputed. The only question is what they mean. Appellee lends money in the following manner, taking a loan of one hundred dollars to illustrate: Appellee gives the borrower a check for ninety dollars, and another check for six dollars, both payable to the borrower. The borrower indorses the six dollar check and delivers it to the Gulfport Loan & Brokerage Company for investigating, approving, and indorsing the note for the loan. The four dollars is retained by appellee as interest. The borrower executes his note in favor of appellee in the sum of one hundred dollars, payable within ten months in installments of ten dollars a month. The note has an acceleration clause to the effect that upon failure to pay one installment all installments shall mature. It bears four per cent. interest after maturity. Attached to the bottom of the note is an agreement signed by both the borrower and appellee providing that each installment paid by the borrower shall draw interest at the rate of four per cent. per annum from date of payment until maturity of the note, at which time the borrower agrees to accept a coupon from the company for interest due him upon installments paid, and the coupon shall be applied toward the purchase by him of a one hundred dollar installment certificate in appellee company. The negotiation for the loan is begun by an application made by the prospective borrower to appellee. This application provides, among other things, that in consideration of the Gulfport Loan & Brokerage Company going to the expense and effort of making the necessary investigation to enable appellee to intelligently pass on the proposed loan, the borrower agrees to pay the brokerage company an investigation fee of six per cent. of the face of the loan, in the event it is made.

The rights and obligations claimed to exist between appellee and the brokerage company are embodied in a

written contract, which follows, leaving off the formal parts and signatures:

"1. That the Gulf Coast Industrial Loan Company is engaged in the business of loaning money and after due consideration, experience and investigation it has been decided by the proper authorities of said corporation that it is wise and to the advantage of the corporation to enter into a contract with the Gulfport Loan & Brokerage Company, party of the second part to this contract, under the terms of which the said Gulfport Loan & Brokerage Company will loan the money of the Gulf Coast Industrial Loan Company as a brokerage agency, on the terms and conditions herein below outlined and specified and the Gulfport Loan & Brokerage Company agreeing and contracting to loan such moneys on such terms and conditions.

"2. That the Gulf Coast Industrial Loan Company hereby grants unto the Gulfport Loan & Brokerage Company the right to loan the money of the said Gulf Coast Industrial Loan Company on forms to be furnished by the said Gulf Coast Industrial Loan Company at a rate of interest of four per cent., which said four per cent. is to be deducted and discounted from the face of the notes at the time such loans are made and that said notes when executed shall be signed by the borrower and at least two good and substantial endorsers, and if, in the judgment of the Gulfport Loan & Brokerage Company officials it is necessary, there shall be more than two endorsers and also collateral, such note with endorsers and collateral, if any, to be acceptable and accepted by the directors, or a committee thereof, appointed for such purposes, of the Gulf Coast Industrial Loan Company and that the said Gulfport Loan & Brokerage Company shall endorse each and all of such notes, guaranteeing full payment of such indebtedness if the notes cannot be collected from the maker, endorsers or collaterals furnished, and in addition thereto, said endorsement of the Gulfport Loan &

Brokerage Company shall and will guarantee payment of any balance that remains due and is not in arrears in payments on any note at the date of the death of the maker of such note.

"3. In addition to the above considerations, the Gulfport Loan & Brokerage Company binds and obligates itself to furnish and provide a place of business satisfactory to the Gulf Coast Industrial Loan Company, in which to conduct its business, furnish all equipment of its office and pay all items of current expenses, including salaries of employees connected with the operation of the business of the Gulf Coast Industrial Loan Company, except taxes, books and stationery, not including, of course, any expenses connected with litigation, and that the said Gulfport Loan & Brokerage Company is granted the right and privilege to make a brokerage charge on each and all loans made of not to exceed six per cent., to be collected from the borrower at the time the loan is made, and in addition thereto, any items of expense connected with the investigation of titles or other collaterals, making of abstracts, paying recording fees, etc., all to be charged either to the borrower or paid by the Gulfport Loan & Brokerage Company, and further privilege is granted to the Gulfport Loan & Brokerage Company to take additional collateral if it so desires and deems it wise and prudent, from any borrower, securing it against harm or expense on account of its endorsing and guaranteeing payment of such loan, which collateral, if taken, shall be attached to the original note and held as additional collateral guaranteeing the payment of such loan.

"4. It is distinctly and clearly understood and a material part of this contract, that the Gulf Coast Industrial Loan Company is under no obligation whatsoever to accept any loan negotiated and arranged for by the Gulfport Loan & Brokerage Company until and unless the directors and proper committee thereof, of the Gulf

Coast Industrial Loan Company is entirely satisfied with such loan, endorsements and collateral.

"5. This contract may be cancelled and nullified by either party hereto serving written notice to the other party thirty days in advance, of the desire and determination to so cancel said contract and this contract shall remain in full force and effect until and unless such written cancellation is had or takes place."

The evidence showed that F. E. Webb was director and manager of appellee company; that he kept the records and was treasurer of the brokerage company; that all the officers of the brokerage company were stockholders in the appellee company; that the brokerage company furnished and provided a place for appellee company in which to conduct its business; that the brokerage company furnished all equipment for the office of appellee company and paid all its current expenses, including salaries of the employees. The stockholders in the brokerage company were stockholders in appellee company, although the reverse was not true.

Ten per cent. taken out of a loan in advance, where the entire loan is to be repaid within ten months, of course, amounts to more than six per cent. per annum. In fact, it amounts to more than ten per cent. per annum. This ten per cent. received in advance goes to appellee and to the brokerage company, taking the face of the transaction to be true. The question is, What does the relationship existing between appellee, the brokerage company, and the borrower, as shown by the record, necessarily mean? We think only one reasonable conclusion can be drawn therefrom, and that is that it constitutes a scheme on the part of appellee company to avoid the payment of taxes—an effort to bring itself within the statute exempting from taxation money lent at not more than six per cent. per annum. The principles of law governing questions of usury are applicable. Any benefit or advantage exacted and received by the lender from the

borrower, whatever may be the form, which added to the interest taken or reserved will yield more than the rate of interest allowed by law, is usury. If a broker is really an agent of the lender, the lender cannot legally require the borrower to pay the full legal rate of interest, and, in addition, compensation to the lender's agent, and where the broker is the regularly employed agent of the lender, the act of the borrower in signing an application for a loan, in which he authorizes the broker to act as his agent, will not prevent the broker's exaction of a commission from the borrower being usurious. 39 Cyc. 971, note 98; Id., 973, note 10; Id., 979, 980, notes 46 and 47.

In Allen v. Grenada Bank, 160 Miss. 419, 133 So. 648, the court held that a bonus received by the lender's agent, who had rendered valuable services outside of the transaction involved in the making of the loan, did not constitute usury, provided the bonus was not so excessive or unfair as to support the conclusion that it was a mere circuitous device to evade the usury laws. Where the agent, in order to procure the loan, became surety and furnished additional security for a substantial portion of the loan, the bonus did not constitute usury. In that case the court used this language: "There is no usury if the lender receives, and is to receive, no part of the compensation paid by the borrower to said agent."

We think the record in this case means, and means nothing else, that appellee and the brokerage company in the conduct of their business are one and the same thing; that the compensation, whether in the form of interest or for brokerage service, is for the benefit of both; and that the pretended investigation certificate for the benefit of the borrower attached at the bottom of the note is part of a mere subterfuge for the purpose of evading taxes, and that neither the borrower nor the appellee is expected to comply with the terms set out in it.

Reversed and judgment here for appellant.