THE RICHTER JEWELRY COMPANY, INC., v. M. SCHWEINERT, a widow

169 So. 750
Opinion Filed December 19, 1935.
On Rehearing July 24, 1936

*Herbert U. Feibelman,* and *Wm. H. Burwell,* for Appellant;

*Gautier, Worley & Bouvier, William A. Lane* and *Guyte P. McCord,* for Appellee.

PER CURIAM.—In this cause Mr. Chief Justice WHIT-
FIELD, Mr. Justice TERRELL and Mr. Justice DAVIS are of
the opinion that the decree of the Circuit Court should be
reversed, while Mr. Presiding Justice ELLIS, Mr. Justice
BROWN and Mr. Justice BUFORD are of the opinion that the
decree of the Circuit Court should be affirmed. When the
members of the Supreme Court, sitting six members in a
body and after full consultation, it appears that the mem-
bers of the Court are permanently and equally divided in
opinion as to whether the decree should be affirmed or re-
versed, and there is no prospect of an immediate change
in the personnel of the Court, the decree should be affirmed;
therefore it is considered, ordered and adjudged under
the authority of State, *ex rel.* Hampton, v. McClung, 47
Fla. 224, 37 So. R. 51, that the decree of the Circuit Court
in this cause be and the same is hereby affirmed.

Affirmed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN, BU-
FORD and DAVIS, J. J., concur.

TERRELL, J.—In December, 1922, appellee applied to
appellant for a loan of $3500.00, offering a diamond and
platinum bracelet as security. Appellant being a small loan
company as well as a jewelry company responded that it
did not have the funds on hand and could not loan that
amount, but Mr. J. A. Richter, an officer of appellant,
told appellee that if she would come back the next day
he thought he could make arrangements to secure a loan
for her if she would compensate him for the service of
securing it. Appellee returned the following day and
Richter advised her that he would let her have $2500.00
on her bracelet, the loan to run six months at ten per cent.
per annum, interest payable monthly. The money to make

the loan was secured by Richter from a Miami bank for which he charged a fee of $300.00.

This proffer was accepted, the loan of $2500.00 was turned over to appellee, and the bracelet was deposited with appellant as security. The interest was paid monthly and the fee of $300.00 for securing the loan was divided into four equal payments and paid at the same time the first, second, third, and fourth interest installments were paid. It was agreed that if the loan was repaid before maturity the fee of $300.00 would be prorated and such part as represented the time not used would be returned to appellee.

Soon after the expiration of the time for which the loan was made appellee, as complainant, brought this suit in equity praying that the contract for the loan be cancelled, that her bracelet be returned to her, and that appellant, who was defendant below, be restrained and enjoined from making or attempting to make any sale or disposition of said bracelet. To the bill of complaint answer and counterclaim were filed on behalf of defendant, a replication was tendered to the counterclaim, testimony was taken, and on final hearing the relief prayed for was granted. From the final decree so entered this appeal was prosecuted.

The decision of the chancellor was predicated on a finding that the appellant was at the time of making the loan a corporation lending money in Dade County, Florida, and that it willfully and knowingly charged the appellee on the instant loan a sum of money in excess of twenty-five per cent. per annum on the sum loaned contrary to Section 4855; Revised General Statutes of 1920, Section 6942, Compiled General Laws of 1927, as follows:

"Any person, association of persons, firm or corporation, or the agent, officer or other representative of any

person, association of persons, firm or corporation lending money in this State who shall willfully and knowingly charge or accept any sum of money greater than the sum of money loaned, and an additional sum of money equal to twenty-five per cent. per annum upon the principal sum loaned, by any contract, contrivance or device whatever, directly or indirectly, by way of commissions, discount, exchange, interest, pretended sale or any article, assignment of salary or wages, inspection fees or other fees or otherwise, or for forbearing to enforce the collection of such moneys or otherwise, shall forfeit the entire sum, both the principal and interest, to the party charged such usurious interest,' and shall be deemed guilty of a misdemeanor, and on conviction, be fined not more than one hundred dollars, or be imprisoned in the county jail not more than ninety days, or both, in the discretion of the court."

Appellant urges four questions for consideration but in our view the case turns on the question of whether or not J. A. Richter can, without violating the statute as above quoted, make a personal charge of $300.00 for services in securing the loan for appellee which he made in the name of appellant who charged ten per cent. interest on the sum loaned. In other words, under the facts stated, can Richter represent the borrower in securing the loan and the lender in making it without violating the prohibition against usury.

The amount of the loan, the rate of interest charged for it, the time it was to run, the security pledged, the fee charged to secure it, and the payments made on interest and fee are not disrupted. The evidence is at variance as to the agreement for a fee to secure the loan and as to some other details with reference to the transaction. It

is admitted that if the fee charged for securing the loan is added to the interest charged the amount is usurious.

The law will not infer a usurious contract. There must be an intention willfully and knowingly to charge or accept a sum twenty-five per cent. greater than the sum loaned. If neither party intended to make a usurious agreement but acted *bona fide* and innocently the law will not imply a corrupt agreement. Where the contract on its face imports usury by an express reservation of more than legal interest, there is no reason for presumption because the intent is apparent. If on the other hand the contract on its face is for legal interest only, then it must be proven that there was some corrupt agreement or device or shift to cover usury and that it was in contemplation of the parties. Bank of United States v. Waggoner, 9 Pet. (U. S.) 378, 9 L. d. 163.

The law seems well settled that where a contract for a loan provides for the rendition of services by the lender to the borrower, a fair charge for the services, in addition to the legal rate of interest on the money loaned, does not render the contract usurious. Wicker v. Trust Company of Florida, 109 Fla. 411, 147 So. 586; Brown v. Harrison, 17 Ala. 774; Houghton v. Burden, 228 U. S. 161, 33 Sup. Ct. Rep. 491, 57 L. Ed. 780; Matthews v. Coe, 70 N. Y. 239, 26 Am. Rep. 583; 27 R. C. L. 231. These cases treat situations somewhat different from that in the case at bar but they establish the rule as contended for by appellant. The test is whether or not the lender performed a service to earn a fee besides interest and whether or not the borrower agreed to pay it.

On this point the evidence is in conflict. It is conclusively shown that appellee secured the loan, that appellant did not have the money to loan until J. A. Richter went

out in the market and secured the money on his endorsement for appellant to make it. Appellee denies agreeing to pay Richter for this service but Richter asserts that she did and it is a fact that she paid the amount of the fee in four different installments and did not complain until a third party told her she was paying usury.

In determining usury courts will disregard the form of the transaction and look to its substance. The record here conclusively shows an intent to charge a fee for services in procuring the loan which was satisfactory to both parties, it also shows a service performed to earn the fee. The contract on its face is not usurious. With the fee deducted there is no charge of usury. When the record shows a consistent purpose to make a contract for a fee rather than a purpose to circumvent the usury law and a service performed extrinsic to the loan to earn the fee, it will take more than the contradictory evidence of the party who secured and used the money to overcome such a showing.

If it be shown that an agreement to pay a fee to secure a loan is nothing more than a sham or ruse to evade the usury law then the courts should so hold, but the burden is on the one making such a charge to prove it conclusively. That burden was not carried in this case and the record preponderates in favor of the *bona fides* of Richter's agency. The contract to secure the loan was separate and distinct from the contract to make the loan and the parties to them were different. The law approves such a charge when legally made and the service performed was proven beyond question and was performed by the consent of appellee. If appellant had had the money the result might be different but not so where he goes out and borrows it on his personal endorsement. The usury statute as here quoted does not outlaw such a contract as the facts of this case exhibit.

It is next contended that the final decree is fatally defective because it does not make a finding of fact to support the conclusion of law as set out therein.

This contention is wholly without merit. Section sixty-six of the 1931 Chancery Act provides in effect that final decrees may not contain the pleadings or any part of them, the findings of the master, nor any finding of law or fact. As to its form we find no error in the final decree.

Other assignments are foreign to the real issues in the cause and will not be treated.

WHITFIELD, C. J., and DAVIS, J., concur.

ELLIS, P. J., and BROWN and BUFORD, J. J., dissent.

BROWN, J. (dissenting).—It is not disputed that J. A. Richter, who charged and was paid the commission, was the Secretary of, and a stockholder in, the lender corporation, the Richter Jewelry Co., Inc. He alone acted for the corporation in making this loan. The chancellor in his decree expressly found that, "J. A. Richter, the Secretary of the defendant corporation, was acting solely as the agent of the defendant, Richter Jewelry Co., Inc., in negotiating and consummating the loan complained of." Indeed, the evidence shows that Richter was not only a stockholder and officer, but also that he was in active control and management of the business of the lender corporation. (Trans. 71-72; 123-124; 133.)

The language of Section 6942, C. G. L., as I understand it, prohibits an officer of a corporation, when putting a loan for the corporation, from charging the borrower any sum for his personal services, which, added to the interest charged by the corporation, would make the total amount charged the borrower equal or exceed 25 per cent. per annum. The prohibition of the statute extends to "any

* * * corporation, or the agent, officer or other representative of any * * * corporation."

So, under the facts of this case, Richter's commission, if he was entitled to any, was chargeable to the lender and not to the borrower. As a general rule, "no man can serve two masters," and that rule must certainly obtain as to officers of money-lending corporation under the language of this statute. Richter obtained and put through a profitable loan for his corporation. If he assisted it to make the loan by indorsing the corporation's note to the bank, so that it could get the money to make the loan, he should have looked to the corporation for his compensation. It appears to have been amply solvent, with a stock worth $70,000.00 and few debts. The note to the bank was signed in the name of the corporation by J. A. Richter as secretary, which indicates that he had authority to borrow money for the corporation. As an officer and stockholder, personal interest should have impelled him to help his corporation, which was in the habit of making loans on jewelry, to make this loan, which was a jewelry-secured loan. If the officers of lending corporations are to be permitted, on any pretext, to charge commissions for loans made by their corporations in such sums as to make the interest on the loan together with the commissions, exceed 25 per cent., without falling within the penalty of this statute, it would be a very easy matter to practically nullify the statute.

But, as I see it, this cannot be done. The tendency of our own decisions is against it. See Owens v. State, 63 Fla. 26, 34 58 So. 125, 128; Tucker v. Fouts, 73 Fla. 1215, 76 So. 130; Wilson v. Conner, 106 Fla. 6, 142 So. 606; Graham v. Fitts, 53 Fla. 1046, 43 So. 513; McCullough v. Hill, 105 Fla. 680, 133 So. 846.

I do not think Wicker v. Trust Co., 109 Fla. 411, 147

So. 586, or Mason v. Cunningham, 149 So. 331, 111 Fla. 200, are in conflict with what has been above said. On the the other hand, a recent Florida case quite closely in point is Hopkins v. Otto, 160 So. 203. In that case, the commission was paid to an employe in the lender's office, which the chancellor in effect held was in the nature of a bonus to the lender, which, with the interest reserved, rendered the loan usurious. The chancellor was affirmed. See also the recent Mississippi case of Gully v. Gulf Coast Industrial Loan Co., 151 So. 754, where the broker was the regularly employed agent of the lender, but the borrower signed an application for the loan authorizing the broker to act as his agent. Held, that in spite of this stipulation in the application, the exaction of a commission by the broker from the borrower operated to render the transaction usurious. The earlier case of Allen v. Granada Bank, 160 Miss. 419, 133 So. 648, is discussed and differentiated.

The broker cannot be the employed agent of the lender and also act as the agent of the borrower, and charge the borrower a commission, if the commission, together with the interest, exceeds the legal limit and amounts to usury, 27 R. C. L. 236.

There is considerable respectable authority upholding the rule that a loan is not rendered usurious by the fact that the borrower pays the lender's agent, as compensation for services rendered to the borrower, a sum which, added to the interest, exceeds the legal rate, *provided that the services for which the lender's agent is compensated are not such as the lender ought to have performed or paid for,* and the compensation is not shared or agreed to be shared with the lender. See 27 H. C. L. 237, and cases cited. But the case for the Richter Jewelry Co., Inc., does not

measure up to the proviso. If, as it is claimed, the said corporation was short of cash at the time and found it necessary, in order to make this loan to appellee, to borrow some money at the bank, and the bank required its officers in charge of its business to personally indorse the note (which, by the way, was for a larger amount than the loan) before it would lend the corporation the money, this so-called "service" on the part of the corporation's officer, if to be paid for at all, should properly have been paid for by the corporation, who thereby was enabled to make an advantageous and well-secured loan at 10 per cent. The corporation got the money on the note and loaned it out on an acceptably secured mortgage. It was not any business of the borrower to pay for any expense incurred by the corporation in obtaining this money from the bank. To charge the borrower for this, in my opinion, rendered the transaction usurious. "A lender will not be permitted to cloak usurious exactions beneath charges for pretended services to the borrower."

In 66 C. J., at page 224, it is said: "Where a general agent of a creditor, being entrusted with full powers and general authority for the management and administration of the creditor's business and affairs, exacts from a debtor the payment of a bonus or commission for or in connection with the making of a contract of loan of forbearance, the transaction is usurious if such exaction causes the lawful rate of interest to be exceeded, even though it is made without the actual knowledge or authority of the creditor, the case standing upon exactly the same footing as if the exaction were made by the creditor himself."

No doubt the statute should have been written in such a way as to require a party who goes into equity to obtain relief against a usurious lender, where the usury amounts

to 25 per cent. or more, to offer to do equity by paying the lender the principal sum received by the borrower, less the usurious charges already paid, but the statute plainly says that where such large exactions are made the lender forfeits the entire sum, both principal and interest, and the courts have no authority to set aside the legislative policy in this regard.

It would seem that this case might well be affirmed on the well known ground that where the evidence is in conflict the decree of the chancellor will be upheld. But it also seems to me that, even if the appellant's testimony be taken as true, the decree should be affirmed for the above reasons.

ELLIS, P. J., and BUFORD, J., concur.

## ON REHEARING

BROWN, J.—Mrs. M. Schweinert, a widow, exhibited her bill of complaint in the Circuit Court for Dade County against the Richter Jewelry Co., Inc., a Florida Corporation, to have cancelled a certain contract for a $2500.00 loan, alleged to be usurious to the extent of more than 25 per cent. per annum, and require the defendant to surrender and deliver the collateral security described in said contract and which consisted of a certain diamond and platinum bracelet of an alleged value of $15,000.00.

There was no objection to the sufficiency of the bill, by way of demurrer or motion to dismiss, or otherwise. The defendant filed an answer in which it was denied that the loan was usurious. It was admitted that the loan was for $2500.00 at 10 per cent for six months, but alleged that the plaintiff agreed to pay J. A. Richter, Secretary of the defendant corporation, $300.00 for his services in getting the money from the bank on his personal credit for the corpo-

ration to make the loan, which $300.00 was to be paid in four equal monthly installments, in addition to the monthly installments of interest, all of which commission installments had been paid, and that the defendant Jewelry Company had not received any part of said sum of $300.00 for its own use; that the plaintiff had paid to the defendant $95.80 on January 22, 1933, and a similar sum on February 22nd, March 22nd, and April 22nd; that each of said payments represented $75.00 of the $300.00 which the plaintiff had agreed to pay J. A. Richter and $20.80 of said amount represented the monthly interest due at the rate of 10 per cent; that out of the four payments thus made by the plaintiff to the defendant each month for four months, $75.00 per month was credited to the account of J. A. Richter, a salaried employee of the defendant, on account of compensation for services rendered and that the remainder was interest due by the plaintiff to the defendant as above cited.

The answer embraced a counter claim in which it was alleged that the loan was originally made for a period of thirty days and was renewed from time to time until May 22nd, 1933, when it was renewed for thirty days, and that all interest under the loan had been paid at the rate of 10 per cent. per annum with the exception of that due on May 22nd; that an accounting be had to ascertain the amount due to the defendant on its said contract and that the court order the plaintiff to pay the same and in default thereof that the personal property described in said contract be ordered sold to the highest bidder for cash and the proceeds applied to the costs and expenses of the suit and the remainder of the payment of the amount found to be due to the defendant on its contract.

The plaintiff filed a replication to the answer in which it

was alleged that the defendant Company had retained $95.80 out of the $2500.00 so that the amount paid to plaintiff on December 22nd, 1932, was $2404.20, and took issue with many of the allegations of fact in the answer.

The contract which the plaintiff signed and which was attached as an exhibit to the bill was dated December 22, 1932, and pledged the said diamond bracelet as security for a thirty day loan of $2500.00, and there was endorsed on the contract memorandum of interest payments each month from January 22nd to May 22nd, 1933. Then followed an endorsement in these words: "Commission paid up to date." This was followed by an endorsement similar to those which preceded it, reading as follows: "Interest paid to June 22nd, 1933, interest amount $20.83." However, the preceding notation of interest payments did not give any amounts. It might be noted at this point that Section 6943 C. F. L. requires lenders of money upon security, immediately upon payments being made thereon to give the borrower a receipt, properly dated, which receipt shall state the amount paid and for what such payment is made, and refusal upon demand to comply with this section results in a forfeiture to the borrower of the entire interest paid.

The testimony in this case was taken before the chancellor in person who found in favor of the plaintiff and rendered a decree accordingly.

The plaintiff, Mrs. Schweinert, testified that she did not agree to pay Mr. Richter any commission; that all of these payments which she agreed to make and did make were payments made to the corporation for interest. But Richter testified that Mr. Lieberman, the President of the Bank, required him to endorse the corporation's notes before the bank would make the loan to his corporation, and that Mrs. Schweinert agreed to pay him the $300.00 for this

service in order to get the loan through. Leiberman was not called as a witness.

The receipt purported to show the payments made by Mrs. Schweinert, but her receipts did not show the date of the payments and the amounts, except the last entry thereon, as above noted, but all of the money appears to have been collected by the corporation and went into the corporation's accounts. But Richter testified that he got his $300.00 and that the corporation got the balance of the payments. The corporation books were not brought in to show to whom the money was credited. Richter testified that the plaintiff came to him on the day before the loan was closed and applied for a loan of $3500.00 upon the diamond bracelet as security. After some conversation he told her that the corporation did not have that amount of money but that if she would give him a little time and come back next day he would let her know what he could do for her. Then Richter went to see Mr. Leiberman at the Mercantile Bank who told him that he would let him have $3000.00 if he would personally endorse the corporation's note. The next morning he went over to the bank and got the $3000.00 on the Jewelry Company's note endorsed by himself personally, and put it in the safe and had it there when Mrs. Schweinert, accompanied by a gentleman, came in and that she finally agreed to take a loan of $25,000.00 at 10 per cent., and agreed to pay Richter for his services $300 as his commission. It was understood that while they usually made thirty day loans, this loan could run for six months. That he paid Mrs. Schweinert $2500.00 in money and she gave him the bracelet and it was agreed that the commission should be paid in four monthly payments of $75.00 each which were to be paid when she came in to pay the monthly interest payments to the corporation. So

Richter's testimony shows that the money was borrowed from the bank before there was any mention made to Mrs. Schweinert of any charge for Richter's services.

It thus appears that the plaintiff made a *prima facie* case when she proved that a sum of money was exacted and paid to the defendant corporation by the plaintiff, by way of interest or commission, or both, in an amount considerably greater than 25 per cent. per annum on the sum loaned. By way of confession and avoidance the defendant pleaded a loan of credit by J. A. Richter personally and a promise by the borrower to pay him as a commission therefor the said sum of $300.00, so that all the corporation exacted or received was the 10 per cent. interest.

The testimony is in conflict on this question as to whether or not the plaintiff, appellee here, ever agreed to pay Richter for his services in connection with this loan, but the Chancellor, who heard the witnesses testify in person, found in favor of the plaintiff, and the case might well be affirmed on that ground. But as I view it, the decision of the court below was correct, even if Mrs. Schweinert did agree to pay Richter this $300.00 commission.

It is not disputed that J. A. Richter, who charged and was paid the commission, was the Secretary of, and a stockholder, in the lender corporation, the Richter Jewelry Co., Inc. He alone acted for the corporation in making this loan. The chancellor in his decree expressly found that "J. A. Richter, the Secretary of the defendant corporation, was acting solely as the agent of the defendant, Richter Jewelry Co., Inc., in negotiating and consummating the loan complained of." There is ample evidence to sustain this finding of fact. Indeed, the evidence shows that Richter was not only a stockholder and officer, but also that he

was in active control and management of the business of the lender corporation. (Trans. 71-72; 123-124; 133.)

The language of Section 6942, C. G. L., is as follows:

"Any person, association or persons, firm or corporation, or the agent, officer .or other representative of any person, association of persons, firm or corporation lending money in this State who shall willfully and knowingly charge or accept any sum of money greater than the sum of money loaned, and an additional sum of money equal to twenty-five per cent. per annum upon the principal sum loaned, by any contract, contrivance or device whatever, directly or indirectly, by way of commissions, discount, exchange, interest, pretended sale of any article,. assignment of salary or wages, inspection fees or other fees or otherwise, or for forbearing to enforce the collection of such moneys or otherwise, shall forfeit the entire sum, both the principal and interest, to the party charged such usurious interest, and shall be deemed guilty of a misdemeanor, and on conviction, be fined not more than one hundred dollars, or be imprisoned in the county jail not more than ninety days, or both, in the discretion of the court."

This statute, as I understand it, prohibits an officer of a corporation, when putting through a loan for the corporation, from charging the borrower any sum for his personal services, which, added to the interest charged by the corporation, would make the total amount charged the borrower equal or exceed 25 per cent. per annum. The prohibition of the statute extends to "any * * * corporation, or the agent, officer or other representative of any * * * corporation."

So, under the facts of this case, Richter's commission, if he was entitled to any, was chargeable to the lender and not to the borrower. As a general rule, "no man can serve

two masters," and that rule must certainly obtain as to officers of money-lending corporations under the language of this statute. Richter obtained and put through a profitable loan for his corporation. If he assisted it to make the loan by indorsing the corporation's note to the bank, so that it could get the money to make the loan, he was furthering the interests of his corporation and he should have looked to the corporation for his compensation. It appears to have been amply solvent, with a stock worth $70,000, and few debts. The note to the bank was signed in the name of the corporation by J. A. Richter as secretary, which indicates that he had authority to borrow money for the corporation. As an officer and stockholder, personal interest should have impelled him to help his corporation, which was in the habit of making loans on jewelry, to make this loan, which was a jewelry-secured loan. If the officers of lending corporations are to be permitted, on any pretext, to charge commissions for loan made by corporations in such sums as to make the interest on the loan together with the commissions, exceed 25 per cent, without falling within the penalty of this statute, it would be a very easy matter to practically nullify the statute. To reverse this decree would be to set a most dangerous precedent.

But, as I see it, this cannot be done. The tendency of our own decisions is against it. See Owens v. State, 63 Fla. 26, 34, 58 So. 125, 128; Tucker v. Fouts, 73 Fla. 1215, 76 So. 130; Wilson v. Conner, 106 Fla. 6, 142 So. 606; Graham v. Fitts, 53 Fla. 1046, 43 So. 512; McCullough v. Hill, 105 Fla. 680, 133 So. 846. See also France v. Munro, 115 N. W. 577, 19 L. R. A. N .S. 391, and note.

I do not think Wicker v. Trust Co., 109 Fla. 411, 147 So. 586, or Mason v. Cunningham, 149 So. 331, 111 Fla. 200,

are in conflict with what has been above said. On the other hand, a recent Florida case quite closely in point is Hopkins v. Otto, 160 So. 203. In that case, the commission was paid to an employe in the lender's office, which, with the interest reserved, rendered the loan usurious. The chancellor was affirmed. See also the recent Mississippi case of Gully v. Gulf Coast Industrial Co., 151 So. 754, where the broker was the regularly employed agent of the lender, but the borrower signed an application for the loan authorizing the broker to act as his agent: Held, that, under the facts of that case, in spite of this stipulation in the application, the exaction of a commission by the broker from the borrower operated to render the transaction usurious. The earlier case of Allen v. Granada Bank, 160 Miss. 419, 133 So. 648, which tends to support appellant's contention, is discussed and differentiated but not overruled.

The agent cannot, under our statute, be the employed agent of the lender and at the same time make a profit for himself by exacting a bonus or commission from the borrower, if the commission, together with the interest, exceeds the legal limit and amounts to usury. Our statute reaches the acts of the lender's agent as well as those of the lender himself. This renders many of the decisions from other states inapplicable here.

There is considerable respectable authority upholding the rule that a loan is not rendered usurious by the fact that the borrower pays the lender's agent, as compensation for services rendered to the borrower, a sum which, added to the interest, exceeds the legal rate, *provided that the services for which the lender's agent is compensated are not such as the lender ought to have performed or paid for,* and the compensation is not shared or agreed to be shared with the lender. See 27 R. C. L. 237, and cases cited. But

the case for the Richter Jewelry Co., Inc., does not measure up to the proviso. If, as it is claimed, the said corporation was short of cash at the time and found it necessary, in order to make this loan to appellee, to borrow some money at the bank, and the bank required its officer in charge of its business to personally indorse the note (which, by the way, was for a larger amount than the loan) before it would lend the corporation the money, this so-called "service" on the part of the corporation's officer, if to be paid for at all, should properly have been paid for by the corporation, which was acting through him, and thereby was enabled to make an advantageous and well-secured loan at 10 per cent. The corporation acting through Richter, got the money on the note and loaned it out on an acceptably secured mortgage. It was not any business of the borrower to pay for any expense incurred by the corporation in obtaining this money from the bank. To charge the borrower for this, in my opinion, rendered the transaction usurious. "A lender will not be permitted to cloak usurious exactions beneath charges for pretended services to the borrower."

In 66 C. J., at page 224, it is said:

"Where a general agent of a creditor, being entrusted with full powers and general authority for the management and administration of the creditor's business and affairs, exacts from a debtor the payment of a bonus or commission for or in connection with the making of a contract of loan or forbearance, the transaction is usurious if such exaction causes the lawful rate of interest to be exceeded, even though it is made without the actual knowledge or authority of the creditor, the case standing upon exactly the same footing as if the exaction were made by the creditor himself."

See also France v. Munro, 115 N. W. 577, 19 L. R. A. (N. S.) 391 and note.

Perhaps the statute should have been written in such a way as to require a party who goes into equity to obtain relief against a usurious lender, where the usury amounts to 25 per cent. or more, to offer to do equity by paying the lender the principal sum received by the borrower, less the usurious charges already paid, but the statute plainly says that where such large exactions are made the lender forfeits the entire sum, both principal and interest, and the courts have no authority to set aside the legislative policy in this regard.

The question was not raised in the court below, but it is contended here by the appellant that the bill was fatally defective because it did not contain an offer to do equity. In other words, it is contended that the complainant had no right to pray for the cancellation of the loan contract and the return of the collateral without first offering to return to the defendant corporation the money actually received from the corporation on the loan less the usurious payments made, provided it be found that there was any usury. Appellant cites the case of Robbins v. Blanc, 105 Fla. 625, 142 So. 223, but that case does not, in the writer's opniion, support the appellant's contention. On the other hand, it supports the contention of the appellee. In that case Mr. Justice Davis, speaking for the Court, had this to say:

"To support a bill for redemption from a mortgage, it is only necessary that complainant offer to pay all amounts legally due on the debt secured, in order to sustain such bill. If by reason of violation of the usury laws a part of the amount lent has become forfeited or otherwise not recoverable in law, it is wholly unessential to enable complainant to obtain relief, that he offer to pay amounts which

under the law are not payable by him or recoverable from him. To hold otherwise would permit the usury laws to be defeated and frustrated in their object, by the simple device of the usurer in exacting a deed in lieu of a mortgage to secure and make certain the payment of amounts which would otherwise be forfeited, or be rendered not recoverable from the borrower.

"When it is once established that a mortgage exists, the equitable right of redemption attaches to the transaction as an inseparable incident. The right to redeem is an incident to every mortgage, or deed which is in law to be regarded as a mortgage, because given to secure the payment of money, and such right of redemption belongs to the mortgagor and those claiming under him. This right cannot be extinguished except by due process of law. Stovall v. Stokes, 94 Fla. 717, 115 Sou. Rep. 828; Quinn Plumbing Co., Inc., v. New Miami Shores Corp., 100 Fla. 413, 129 Sou. Rep. 690, 73 A. L. R. 600.

"He who seeks equity must do equity, so it is an essential part of a bill to redeem a mortgage that it offer in express terms to pay the amount due, with costs. Horn v. Indianapolis Nat. Bk., 125 Ind. 381, 25 N. E. 558, 21 A. S. R. 231, note 9 L. R. A. 676. But when the bill does this, it is sufficient and it is not necessary that the complainant allege his willingness or ability to pay more than under the law he is legally and justly liable to pay, according to the nature of the transaction.

"The case at bar is not controlled by what was said in Taylor v. Rawlins, 10 Fla. 621, 106 Sou. Rep. 424, since no indebtedness can become judicially collectible against a borrower by a lender in excess of what is permissible to be collected under the usury laws, where it appears that usury has been exacted on the original loan or in suit. This is

true regardless of the form or device by which the debt is secured, evidenced or to be established. Therefore the borrower in a case like the present is under no legal or equitable obligation to return the *full* amount of the money he has obtained from the lender, where it is made to appear that the transaction in its inception was tainted with usury. In such cases the borrower is only under the obligation to offer to repay the lender what, if anything, the usury statutes preserve to him as a legally recoverable demand judicially enforceable on the lender's behalf in a court of equity."

See also Family Loan Corporation v. Smetal Corporation, 119 Fla. 497, 161 So. 438. In that case Mr. Justice BUFORD cites the case of Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123, wherein it was said:

"When the Legislature declares certain instruments illegal and void, there is inherent in the courts of equity a jurisdiction to order them to be delivered up, and thereby give effect to the policy of the Legislature."

If, as our statute provides, where more than 25 per cent. per annum is exacted, the entire sum of both principal and interest is forfeited, no element of validity remains in the contract. The effect of such a loan contract is to make it wholly void and subject to cancellation by a court of equity. Furthermore, the statute makes the lending of money on such terms a criminal offense and a contract of that nature is therefore void as against the public policy of the state as established by its Legislature. Therefore when a suit is brought by the borrower to cancel such a contract and require the surrender of the security, there is no legal or equitable duty resting upon the borrower to offer to return any part of the money loaned. It must be conceded that this statute is a harsh and rigorous statute, but the Legis-

lature was dealing with a harsh and sometimes unscrupulous business, the exaction of more than 25 per cent. per annum for the lending of money, and evidently resorted to these measures to protect unfortunate and necessitous borrowers.

It would seem that this case might well be affirmed on the well known ground that where the evidence is in conflict the decree of the chancellor will be upheld. But it also seems to me that, even if the appellant's testimony be taken as true, the decree should be affirmed for the above reasons.

Affirmed.

ELLIS, P. J., and BUFORD, and DAVIS, J. J., concur.

WHITFIELD, C. J., and TERRELL, J., dissent.