THOMAS, Justice.
This controversy developed when the appellant filed an answer to a bill brought by materialmen to enforce payment of their claims. The appellant asked the court ■ to foreclose four mortgages she held on the same property. The suit culminated in a decree foreclosing the liens and declaring the mortgages void as violative of Section 687.07, Florida Statutes 1951, and F.S.A.
Although the four mortgages fall into two categories, the general pattern of the transactions was the same. Two identical mortgages, each securing $2,000, were executed by William B. Carr and his wife, to Marian Noble, 19 November 1951, and were purchased the same day by the appellant. Two mortgages, each securing a debt of $5,000, were executed 18 October 1951 by William B. Carr and his wife to Marian Noble. The following day one of these was sold to Frank R. MacNeill who later assigned it to D. G. Swartz, 29 November 1951, and one was assigned to James Falkos. Eventually, in July 1952, the appellant purchased both of these mortgages to protect, so she said, the two mortgages for $2,000 each. All four mortgages bore interest at the rate of 6% per annum, were payable in ninety days, and in each instance 10% of the face value was paid to one William Hoffman who, it appears, had been involved in many similar transactions when the appellant was interested in loaning .money.
William B. Carr was obtaining the loans in order to finance his construction program. Hoffman had been a mortgage broker for thirty years and had been engaged by the appellant for three years to make loans for her.
As we have said, the interest rate was 6% but it was provided in the mortgages that if they were not paid at maturity, the interest would then become 10% per annum. Under the general arrangement evidently *698 Hoffman would charge the borrower 10% of the ' face value of the mortgages and would remit 3% of the face value to the appellant, in the guise of a discount, at the time she purchased the mortgages. In the case of the four mortgages with-which we are now dealing, Hoffman was also obligated to remit 3% of the face value to Leon Noble upon payment of the loans.
In other words, as soon as the mortgages, were executed to Marian Noble, who advanced no money whatever, they would be assigned to some person, that is, appellant or MacNeill or Falkos, who would then make the loans for the face amounts of the notes less 3% and make available for áistribution by Noble, and later by Hoffman, 97% of the amounts shown in the notes. Hoffman would-retain 7% and he and Noble disburse the remainder. To set the plan in motion Noble would have the mortgages drafted in Hoffman’s officé, then secure the signature of his wife to the assignments. And there is evidence that he was not too meticulous about the execution of the instruments. For instance, there was testimony showing that after the four mortgages were prepared; Noble left them at the home of the -Carrs; the Carrs signed the instruments and Carr took them to Noble’s office where Noble, a notary public, signed as'a witness, filled out the form of acknowledgment, and affixed his seal, although neither one of the Carrs appeared and acknowledged the execution. Marian Noble was but a figurehead and Leon Noble, who stood to profit by the transactions, was her husband and was an associate of Hoffman.
In, arriving at his conclusion that the earnings of the appellant were so high as to require cancellation of the mortgages the master used the following formula: he multiplied the amount of the commission, of 10%, by four, inasmuch as the loans were made for only ninety days, and observed that in the case of a $5,000.loan, the amount of the commission on -the basis of one year would be $2,000. _ Obviously if this formula is correct, the -charge...would have been forty per cent oi; the jface valup without taking into account the interest charged. - .
It has been seen 'that the $2,000 mortgages were purchased by the appellant for the face value less a discount of 3% thereof before maturity while the $5,000 mortgages were purchased after maturity for the face value and accrued interest. The $5,000 mortgages had been assigned '-to appellant, and the original mortgagee had received a discount of 3% of the face amounts.
We are aware of the provision in Section 687.04, Florida Statutes 1951, and F.S.A., that in order to hold a purchaser of negotiable paper before maturity responsible for usury, the usurious chárge must appear on the face of the instrument or the put-chaser must be shown to have had actuál notice, however, we do not feel obliged to explore the application of that inhibition to a loan made in violation of Section 687.07, supra, because it is clear to us that the' appellant was thoroughly familiar with the infirmities in the $2,000 mortgages not only because she received 30% of the charge that .had been made by Hoffman iii negotiating the loans but also because of her association in numerous similar matters. As for the $5,000 loáns she not only purchased them after maturity, but these transactions so, nearly resembled the others in which Hoffman represented her that it requires no imagination to decide that she was conversant with the whole plan of loaning her money and that this knowledge on her part should be construed as a willful effort to exact an unlawful return on her loans.
We think there is abundant testimony to support the master’s view, and the chancellor’s approval, that Hoffman was the agent of the appellant in the series of transactions and that .the appellant should be charged with knowledge of Hoffman’s manner of- operation; also, that in the devious way we have described, there was exacted from the borrower a sum of money which in proportion to the amount actually received by the borrower caused the loans *699 to fall within the prohibition of Section 687.07, supra.
There is some conflict in the testimony about the relationship between Hoffman and Carr, Hoffman contending that he was authorized by Carr to deduct a commission for securing the loans for Carr, Carr denying that Hoffman was his representative. The master believed Carr and the chancellor sustained his conclusion. We see no occasion to interfere.
Adverting to the formula used by the master, we think he was correct in determining the income for the life of the loan, Ayvas v. Green, Fla., 57 So.2d 30, and we have no hesitancy in holding that the amount of the commission which was divided between the lender and the broker added to the interest gives a sum much in excess of “twenty-five per cent per annum upon the principal sum loaned,” Section 687.07, supra, and violated the provision that such may not he accomplished “by any contract, contrivance or device whatever, directly or indirectly, by, way of commissions, discount” and so on. Section 687.07, supra.
We think the chancellor’s decision is supported in principle by our opinion in Stoutamire v. North Florida Loan Ass’n, Inc., 152 Fla. 321, 11 So.2d 570, 571, where we repeated the pronouncement in Richter Jewelry Co. v. Schweinert, 125 Fla. 199, 169 So. 750: “'‘The agent cannot,' under our statute, be the employed agent of the lender and at the same time make a profit for himself by exacting a bonus or commission from the borrower, if the commission, together with the interest, exceeds the legal limit and amounts to usury. Our statute reaches the acts of the lender’s agent as well as those of the lender himself.’ ”
Nothing we have said is meant to reflect on the legitimate business of the mortgage broker. The vice of the present dealings was the attempt to make too much too quickly. Between the amount of the interest and the highest legal rate there was an ample margin for a legal charge by 'the broker, but when the broker charged as he did and represented the lender as he did, the combined burden placed on the borrower caused the deals to collide with the statute as we held in Stoutamire v. North Florida Loan Ass’n, supra.
Having reached the conclusion that the master and chancellor were correct in declaring .the loans usurious and forfeit, there is no need for us to discuss the merits of the decree with reference to the material-men’s liens.
The decree is—
Affirmed.
DREW, C. J., and THORNAL, J., concur.
ROBERTS, J., concurs specially.