WILLIS, Associate Judge.
The appellants, Jay Dillon and Elizabeth Dillon, husband and wife, were plaintiffs in the court below in a suit against J. W. Walter, Inc., and Mid-State Investment Company, corporations, in which they sought a decree declaring a certain note and mortgage given by plaintiffs to J. W. Walter, Inc., to be usurious and to visit upon the alleged usurers the consequences provided in Section 687.04, Florida Statutes, F.S.A. The defendants below (appellees here) answered denying the alleged usury and the cause came on trial before the chancellor. At the conclusion of the plaintiffs’ testimony, the chancellor, on motion of the defendants, entered a final decree dismissing the complaint with prejudice. Hereafter the parties will be referred to as they appeared in the court below as plaintiffs or defendants.
It appears from the pleadings and evidence that plaintiffs entered into a written contract with Walter Construction Company, a partnership, whereby the latter agreed to construct a certain house on property of the ' plaintiffs. The contract described ■ the house to be -built .by refer *392 ence to certain literature and a certain model house with some specified extras and. the paragraph dealing with the purchase price is in the following language:
“The price agreed upon for this house is to be $1895.00 plus service charge payable as follows: $300.00 upon signing this agreement, receipt of which is hereby acknowledged and the balance payable monthly as a mortgage at the rate of $46.39 per month for 48 months.”
On the same date as that of the contract, July 26, 1955, the plaintiffs executed to J. W. Walter, Inc., a corporation, their promissory note in the sum of $2,226.72 payable in 48 monthly installments of $46.39 each, the first instalment being due September 1, 1955 “and one instalment to become due and payable on the 1st day of each succeeding month until the whole of said indebtedness is paid, with interest from maturity at the rate of six per cent per annum.” A mortgage on the property of plaintiffs where the house was to be built was given by plaintiffs to J. W. Walter, Inc. to secure the note.
By a letter dated August 31, 1955 to the plaintiff Jay Dillon, the Mid-State Investment Corporation advised that it had purchased the mortgage from J. W. Walter, Inc. and requested payment be made to it at the address stated on the letterhead. For this reason this corporation was made a defendant.
It appears that the Walter Construction Company is a partnership of which one J. W. Walter owns a 70% interest. This concern was engaged in the construction of low cost unfinished houses on the property of the persons with whom it contracts. It maintained an office at Ocala in charge of a Mr. Badger, who closes out the deals with customers of the concern in that area. Both J. W. Walter, Inc. and Mid-State Investment Company are corporations of which 98% of the capital stock of each is owned by J. W. Walter. These corporations are almost exclusively engaged in the business of acquiring or selling mortgages.
The plaintiffs testified that prior to the execution of the contract, note and mortgage they contacted Mr. Badger and discussed the building of a house for them. Reference was made to one of Walter Construction Company brochures which pictured and described a type of house, known as “The Resident”, which called for a price of $1,595. The plaintiffs desired two feet extra in the length of the building and sixteen inch centers for the studding, instead of twenty-four inch centers, as specified in the brochure. For these extras, Mr. Badger advised that there would be an additional $300 to which the plaintiffs agreed. The plaintiffs further testified that they asked Mr. Badger if there would be any difference in the price if it were cash or on terms. They said he said the price would be the same except that if the payment was to be on terms there would be added interest in advance at the rate of 6 per cent per annum plus mortgage handling charges for title insurance, fire insurance premium for one year, credit investigation and cost of recording the mortgage, and that such interest and handling charges would aggregate $200.
It also appears that a $300 down payment in cash was agreed upon and paid.
The various papers were all executed the same day in the office of Walter Construction Company in Ocala. They were all prepared by Mr. Badger, the office manager of that concern, and Badger says he was directed by his employers to take any notes and mortgages in the name of J. W. Walter, Inc.
Other than the $300 cash payment made by plaintiffs to Walter Construction Company (except for a payment of $50 for some jalousies which seems to have been a side deal not included in the contract), there was no money given or received by any of the parties to the contract, note or mortgage. No money or checks were *393 shown to have gone from J. W. Walter, Inc. to the plaintiffs o-r to Walter Construction Company.
The plaintiffs contend that they contracted a debt with Walter Construction Company for the so-called cash price for the house of $1,895 plus handling charges for title insurance, fire insurance for one year, credit investigation report and mortgage recording fee. The testimony shows that the actual costs of those specific items of “handling charges” was $66.23. Thus they contend that the unpaid balance of the debt was $1,661.23 ($1,895 plus $66.23, less down payment of $300) and that this was the sum “to be financed” by J. W. Walter, Inc. They further contend that the aggregate of the 48 monthly installments of $46.39, namely $2,226.72, would yield interest at the rate of 15.35% per an-num in violation of Sections 687.02 and 687.03, Florida Statutes, F.S.A., and thus subject the payee and mortgagee to the penalties and forfeitures set forth in Section 687.04, Florida Statutes, F.S.A,
In support of their position they cite Richter Jewelry Co. v. Schweinert, 125 Fla. 199, 169 So. 750; Stoutamire v. North Florida Loan Ass’n, 152 Fla. 321, 11 So.2d 570; Hawley v. Kendall, 139 Fla. 850, 191 So. 10; Burket v. Johnson, Fla., 61 So.2d 197; and Beach v. Kirk, 138 Fla. 80, 189 So. 263.
In all of the cited cases there was actually either a loan of money to a borrower from the party found to be usurer, or the usurer had advanced money to a third party for the borrower’s benefit and exacted from the borrower an unlawful rate of return for the money advanced.
The defendants contend, and the chancellor below held, that the transaction here did not involve a loan of money or the forbearance of a debt, but that in the dealings between the parties the Walter Construction Company had made a cash price for one sum, $1,875, and a credit price of another sum, $2,226.72 and the usury laws are in no wise applicable. They cite in support the cases of Davidson v. Davis, 59 Fla. 476, 52 So. 139, 28 L.R.A.,N.S., 102 and Nelson v. Scarritt Motors, Inc., Fla., 48 So.2d 168.
We believe, as did the chancellor below, that this case is controlled by the ruling in the Florida Supreme Court in Davidson v. Davis, supra. In that case the court found that there was no usury where the original mortgagee was the owner of a tract of land which he was willing to sell to the mortgagor for cash for one price but agreed to give the mortgagor a one year’s extension of time provided that at the end of the year he would pay a sum in excess of the cash price equal to interest on the cash price of 12i/¿% interest. The. Court said:
“The law is well settled that usury can only attach to a loan of money, or to the forbearance of a debt, and that on a contract to secure the price or value of work and labor done, or to be done, or of property sold, the contracting parties may agree upon one price if cash be paid, and upon as large an addition to the cash price as may suit themselves if credit be given; and it is wholly immaterial whether the enhanced price be ascertained by the simple addition of a lumping sum to the cash price, or by a percentage thereon. In neither case is the transaction usurious. It is neither a loan nor the forbearance of a debt, but simply the contract price of work and labor done and property sold; and the difference between cash and credit in such cases, whether 6, 10 or 20 .per cent, must be left exclusively to the contract of the parties, and no amount of difference fairly agreed upon can be considered illegal.”
Similarly, in Nelson v. Scarritt Motors, Inc., supra, it was held that a retain title contract for the purchase of a used car, with an option to purchase for cash or on deferred payments, was not usurious when the deferred plan was accepted by the pur *394 chaser, even though the difference between •the cash price and the deferred payments was in excess of an amount equivalent to legal interest.
In the case at bar there is no showing by the plaintiffs that there was any loan of money or forbearance of a debt. For aught that appears, if in fact there was any actual transfer of money or credit from J. W. Walter, Inc. to Walter Construction Company for the benefit of plaintiffs, such was in the full amount of the face of the note from the plaintiffs to the corporation. Indeed, the written contract between plaintiffs and Walter Construction Company is in that amount if one would apply simple multiplication of 48 by $46.39.
The argument is made that the defendants’ manager, Badger, is an experienced man in loans and mortgages whereas the plaintiff, Jay Dillon, is a plasterer with an eighth grade education, and that the wording of the contract was misleading because it did not set out the amount of the “plus service charge”. Also, it is stressed that Badger had told the plaintiffs that the handling charges and interest would only amount to some $200. However, it is clear from the testimony of the plaintiffs and from their written agreements that they understood and agreed that they were to pay $46.39 per month for 48 months. Such was in the contract and in the note and in the latter the aggregate of such payments, namely $2,226.72, was set forth in both figures and words. The plaintiffs also testified that they understood they were to pay the specified monthly payments for 48 months.
It is entirely immaterial whether the corporations are separate entities as between themselves and as between either of them and the partnership, or whether they are merely the alter ego of J. W. Walter with interlocking agencies between themselves. There was no loan of money, advance of money or forbearance of a debt such as would bring into operation the usury statutes. There was a contract to secure the price or value of work, labor and materials to be performed for the plaintiffs on a credit basis fairly agreed upon. Furthermore, there was no showing that J. W. Walter, Inc., obtained any premium or in fact any rate of return.
For the foregoing reasons, the final decree of the court below is affirmed.
STURGIS, C. J., and WIGGINTON, J., concur.