ROY EDWARD PUSHEE, et ux., v. JANE WATTS JOHNSON

166 So. 847.

Division B.

Opinion Filed March 23, 1936.

*B. R. Cisco,* for Appellants;

*Frank Smathers* and *Walter C. Dunigan,* for Appellee.

BUFORD, J.—The appeal brings for review a final decree in foreclosure proceedings in which the defense interposed by the defendants was that the loan secured by the mortgage was unanimous in that the lender violated Sec. 4851

R. G. S., 6938 C. G. L., and was amenable to the forfeiture prescribed by Sec. 4852 R. G. S., 6939 C. G. L.

Both the Master in Chancery and the Chancellor found against the contentions of the defendants, who are appellants here.

The findings of the Master and of the Chancellor are set out at some length but, in short, they are to the effect that the borrower applied to a broker to find a loan of $8,250.00 and agreed to pay the broker 10% of that amount for finding the loan; that it was made known to the broker that the loan to avail the borrower had to be procured quickly and the borrower wanted the money for a period of five (5) years. With this agreement between the broker and the proposed borrower the broker approached the lender, over whom he is not shown to have had any influence or control, and applied for the loan as agent for the borrower. The lender would not agree to make the loan for a period of five years and the broker, being pressed for time in which to find the loan, finally agreed with the proposed lender that if the lender would loan the money to the borrower at 8% interest per annum for a period of two (2) years the broker would pay the lender one-half of his 10% commission. The broker then advised the borrower that he could only get the money for two years at 8% and that to close the transaction he, the broker, would have to pay the lender one-half of his commission. Thereupon the borrower agreed to take the loan for the two-year period, made the note and mortgage for the $8,250.00 and the lender deposited that amount in bank to be paid over to the borrower when the borrower should have been able to show unincumbered title to the property mortgaged and to have paid certain items which were legitimately chargeable to the borrower in connection with the loan as follows:

"$8.20, State Documentary Stamps; $7,551.89 for satisfaction of pre-existing mortgage on the premises; $68.00 to the New York Title & Mortgage Company, representing title insurance, abstracting and recording fees; and the further sum of $10.00 for escrow expenses in settlement of the pre-existing mortgage."

It was further found that these expenses were paid and that at the direction of the broker the borrower drew his check payable to the broker in the sum of $412.50 and his other check to Mrs. Ada Welch for the sum of $412.50, which check was endorsed to the lender to pay the obligation of the broker to the lender of one-half of his commission for his services in finding the loan. The findings in this regard are as follows:

"I further find that on April 23, 1932, the defendant, Roy Edward Pushee, at the direction of his agent, C. H. W. Read, drew his check for $412.50 on the Mimai Beach First National Bank, payable to the order of Mrs. Ada Welsh; that said check was shortly thereafter endorsed by Mrs. Ada Welsh and the proceeds thereof paid over to the complainant. I further find that this $412.50 was one-half of the commission which the defendant, Roy Edward Pushee, had theretofore promised and agreed to pay to the agent, C. H. W. Read, for his services in procuring the loan, I further find that the said $412.50 received by complainant was received by her after she had paid, unconditionally, the $8,250.00 to the defendant, Roy Elward Pushee, and that at the time she received the said $412.50 the defendant, Roy Edward Pushee, was not in default under the terms of the note and the mortgage, and that Roy Edward Pushee by drawing the check for $412.50 was acting merely as the paying agent in the discharge of the promise of the agent, C. H. W. Read, to the complainant, to divide his com-

mission with her, and that Roy Edward Pushee was not in any wise injured by the receipt by the complainant of the said $412.50, nor was he in anywise pecuniarily affected by said payment; that neither the complainant nor the defendant, Roy Edward Pushee, intended to take or to give usurious interest. I further find that the complainant, in accepting the said $412.50, believed that she was .................. one-half of the real estate agent's commission, and that she relied upon said real estate agent's advise to her that her acceptance of the said one-half of his agreed commission was entirely legal and proper."

All of these findings, we hold, are justified by the record and the law as applicable to this case. We need not cite authorities at this time to support the statement that where an appeal is based on questions of fact, the findings of fact by the Chancellor will not be disturbed on appeal where not clearly erroneous or where they do not proceed from a consideration of the evidence in light of inapplicable principles of law.

It is also well settled in this jurisdiction that the borrower may legitimately agree with the lender to pay the actual and reasonable expenses of examining and appraising the security offered for the loan, as well as for title insurance, and the costs of closing the transaction even though such payments when added to the interest contracted for exceed the maximum interest allowed by law. Wilson v. Conner, 106 Fla. 6, 142 Sou. 606; Hopkins v. Otto, *et al.,* 118 Fla. 865, 160 Sou. 203.

So the only question left for our determination is whether or not in the transaction as above set forth the lender by accepting a part of the commission, which had theretofore been agreed to be paid to the broker without placing any further pecuniary burden on the borrower, constituted a

violation of our usury statutes and made the loan such as to cause the lender to be required to submit to the forfeiture provided by Sec. 4852 R. G. S., 6939 C. G. L.

We hold that the facts in this case do not bring the transaction within the condemnation of the usury statutes. The evidence amply supports the findings of the Chancellor that the borrower was obligated to pay the broker 10% of the amount of the loan for finding the loan. Therefore, when the broker agreed to pay the lender a part of the commission which he would earn the borrower was not put to any additional expense by reason of that agreement. The loan was made no more burdensome than it would have been had not the lender and the broker come to that agreement and probably the result of the agreement was for the benefit of the borrower, inasmuch as it enabled the borrower to procure the loan within the time required and without any additional payment by him to the lender than that which the borrower would have been required, at all events, to pay. In support of this enunciation see Dickey v. Brown, 56 Iowa 426, 9 N. W. 374, where in a case of very similar circumstances and conditions that court said:

"The defendant, Brown, applied to John Furguson, of Charles City, Iowa, to negotiate for him a loan of four thousand dollars and agreed to pay him for so doing a commission of seven and one-half per cent. Furguson forwarded Brown's proposition to Holland, Furguson & Co., of Rockford, Illinois, who, as agents of the plaintiffs, furnished the money and made the loans. They retained two hundred dollars as their commission, and forwarded thirty-eight hundred dollars to John Furguson, who set aside one hundred dollars for his services, and gave the defendant, Brown, thirty-seven hundred dollars.

"The defendants claim at least one of the plaintiffs had knowledge Holland, Dickerson & Co. received the two hundred dollars aforesaid at the time the loan was made, and, therefore, that the plaintiffs through their said agents, exacted and received more than ten per cent. interest. We are constrained to say this proposition is not well taken.

"John Furguson had the right to do as he pleased with the three hundred dollars Brown agreed to pay him. He could, if he saw proper, divide with Holland, Furguson & Co., and if he could not negotiate the loan otherwise, it possibly was his duty to Brown to do so. John Furguson was the agent of the defendant, Brown, and any contract made between them alone could not have the effect of tainting such contract with usury so far as the plaintiffs are concerned."

Also see McArthur v. Schenk, 31 Wis. 673, 11 Am. Rep. 643, in which the Court said:

"The theory upon which laws against usury have been enacted, and the principle which has governed in their interpretation, have always been, that the borrower was at the mercy of the lender and subject to his utmost exactions and avaricious demands, unless protected by laws. In theory the borrower has been put by such laws in the same category with persons under legal disability to contract, such as infants, *femes coverts*, and persons *non compos mentis*. He has been declared legally incompetent to make a bargain about money where more than the lawful rate of interest was demanded. The prohibition of all such laws, and of our law, has been and is against the lender's bargaining for, reserving or taking usury *from the borrower*. We say, 'from the borrower,' not because the statute uses these exact words or in terms so enacts the prohibition, but because such is the evident intent and purpose of the statute.

Acts of the kind have always been so interpreted and understood. It is to shield from the grasp of the lender, and save the borrower from the injurious consequences of his own weakness and inability, that such statutes have been passed. They are designed for the protection of the borrower, and the protection so given has been extended to those persons standing in his place or representing him and succeeding to his rights, such as heirs-at-law, executors, devisees, sureties, assignees and the like. They are designed for the borrower's protection and benefit, and the protection and benefit of those thus representing him, *when he or they has or have suffered loss or injury from the unlawful exactions of the lender, or may suffer such loss or injury from the performance of the usurious contract, and when likewise he or they see fit not to waive the sanction or penalty of the statute in his favor."* Gleason v. Childs, 52 Vt. 421; Clark v. Shehan, 47 N. Y. 188.

In the case of Benson v. First Trust & Savings Bank, 105 Fla. 135, 142 So. 887, in an opinion by Mr. Justice Davis, this Court said:

"But under Section 4855, R. G. S., 6942 C. G. L., the lender must 'wilfully and knowingly charge or accept' a sum of money that is greater than the sum of money loaned and an additional sum of money equal to 25 per cent. per annum upon the principal sum loaned before he can be held to have forfeited the entire sum, both the principal and interest, to the party who was charged such usurious interest.

"When this condition prevails the lender not only forfeits the entire sum, both principal and interest, to the borrower, but he likewise commits a violation of the criminal law for which under the terms of the statute he may be fined not more than one hundred dollars or imprisoned in

the county jail for not more than ninety days, or both."

It will be observed that this construction of the statute carries the thought and the holding that the lender must wilfully and knowingly charge to or accept from the borrower the excess constituting usurious interest but the statute will not apply where the excess is received from one other than the borrower and creates no additional or more burdensome obligation on the borrower than if the excess had not been received from such third party.

In Chandler v. Kendrick, 108 Fla. 450, 146 Sou. 551, this Court, speaking through Mr. Justice Terrell, said:

"The very purpose of statutes prohibiting usury is to bind the power of creditors over necessitous debtors and prevent them from extorting harsh and undue terms in the making of loans. Under the law and the decisions, usury is a matter largely of intent. It is not fully determined by the fact of whether the lender actually gets more than the law permits, but whether there was a *purpose in his mind to get more* than legal interest for the use of his money, and whether by the terms of the transaction and the means employed to effect the loan, he may by its enforcement be enabled to get more than the legal rate. Benson v. First Trust and Savings Bank, 105 Fla. 135, 142 So. 887; R. C. L. pp. 223, 224.

"A thing is wilfully done when it proceeds from a conscious motion of the will, intending the result which actually comes to pass. It must be designed or intentional, and may be malicious, though not necessarily so. 'Willful' is sometimes used in the sense of intentional, as distinguished from 'accidental' and when used in a statute affixing a punishment to acts done willfully, it may be restricted to such acts as are done with an unlawful intent. Clark v. Grey, 101 Fla. 1058, 132 So. 832; United States v.

Boyd (C. C.) 45 Fed. 851, text 855; State v. Clark, 29 N. J. Law 96."

This enunciation is not in conflict with what we hold here. The necessitous borrower in the case now before us was required to pay to the lender only 8% on the loan. The borrower, it will be remembered, had already agreed to pay the broker 10% for finding the loan. The case would have been entirely different had the borrower only agreed to pay the broker 5% and had then been required to pay the lender an additional 5% bonus. That would have placed an additional charge upon the borrower to procure the loan from the lender.

The facts in this case differentiated also from those cases where the record has shown that the person purporting to procure the loan was an officer or agent of the lender or stood in such relation to the lender as to control the action of the lender in regard to the loan. In such case the officer, agent or controlling factor of the lender can not be divorced from the identity of the lender and, therefore, the action of such officer, agent or representative is in law the action of the lender and the lender will be held responsible and not be allowed to take advantage of the subterfuge of its officer, agent or representative.

There are cases which appear to hold to the contrary of what we are holding here, but it seems to us that the whole purpose of our statute is to protect the borrower from the grasping devices of the lender and where the transaction is such that the lender receives compensation above the lawful interest charged but by doing so places no greater burden on the borrower than would be upon him otherwise, the statute does not apply. Provided, of course, the facts preclude the conclusion that the agent who purports to act for the borrower and takes compensation from the bor-

rower is not in truth and in fact the officer, agent or representative of the lender and acting in behalf of the lender in placing the loan.

For the reasons stated, the decree should be affirmed.

It is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN, J., concur in the opinion and judgment.

DAVIS, J. (concurring).—Under the facts presented by the record the agent for the borrower, and the borrower agreed, before any one was approached to lend the money, that the borrower would pay the loan agent ten per cent. of the amount procured, solely as a compensation to the agent for his services in procuring the loan. The ten per cent. commission contract *was independent of the loan transaction* between the lender and the borrower and was made before the agent agreed to give one half of said commission to the lender. There is no support in the record for any inference that the agreement between the borrower and the loan broker was a mere subterfuge, by which the broker would procure the bonus in the first instance in order that it might be paid to the lender later, nor was it shown that the lender and the broker conspired together or otherwise co-operated with each other to the end of the lender's collection of more than the legal rate of interest. Therefore the controversy removes itself into whether or not the *mere acceptance* or receipt by a lender, in good faith and without intending to do wrong, of a sum of money that when *aggregated* with a part of the broker's compensation turned over to the lender is usurious because it exceeds the legal rate of interest. The master found that it was. The Chancellor found that it was not. I think the holding

of the court in Chandler v. Kendrick, 1-8 Fla. 450, 146 Sou. Rep. 551, supports the Chancellor. The usury law was intended as a shield of defense, not as a means of borrowers getting something for nothing on mere legal technicalities.