FLORENCE L. CROMPTON, as Successor to L. B. ROBINSON; EFFIE DUSKIN, as Successor to P. L. POTTSDAMAR, and DR. J. JONES, as Trustee for the Grand Court Order of Calanthe, Jurisdiction of Florida, Subordinate to the Supreme Court of Calanthe of the Knights of Pythias of North America, South America, Europe, Asia, Africa and Australia, Unincorporated, v. T. L. SMITH, Single; ROBERT S. GADLIN, *et ux.,* WILLIE AMIKER and ANNIE TAYLOR, a widow; M. A. SMITH, Liquidator Merchants Bank & Trust Company, a Corporation.

192 So. 186

Division A

Opinion Filed November 17, 1939

Rehearing Denied December 5, 1939

*Walter F. Rogers, Ray Selden* and *S. D. McGill,* for Appellants;

*P. W. Harvey,* for Appellees.

THOMAS, J.—The sole question involved in this appeal is whether the loan secured by the mortgage attempted to be foreclosed was usurious and the answer depends upon the status given a payment of money made by the borrower to the lender's attorney and not included in the principal debt.

The mortgage was executed in 1922 and payments of interest were made as late as 1931. At the time of application for the loan, in amount $5,000, it was discovered that certain defects appeared in the title of the property which the borrower proposed to encumber and a fee of $500 was named by the lender's attorney for his services in connection with removing these defects and closing the loan and to defray the expenses of the transaction. This fee, we are told, was acceptable to the parties and was actually paid before the money borrowed was delivered. We learn also that no part of the fee ever reached the lenders but that all of it was used for the purposes originally intended.

It is conceded that if the amount paid the attorney was not in fact a bonus deducted from the amount actually received, the loan is free of any taint of usury.

Though the sum of $500 paid to the attorney was designated "bonus" by defendants' witness, the record does not justify such a construction. There was no impropriety in the discharge by the borrower of the fee charged by the lender's attorney for his work in behalf of his client. That is a method now generally accepted so that the one lending may be relieved of any cost incurred in the steps necessary to consummate the deal and assure him of the validity of his security. It is not only the usual procedure where indi-

viduals are concerned but also in cases where money is lent by governmental agencies created for the purpose.

"It is also well settled in this jurisdiction that the borrower may legitimately agree with the lender to pay the actual and reasonable expenses of examining and appraising the security offered for the loan, as well as for title insurance, and the costs of closing the transaction even though such payments when added to the interest contracted for exceed the maximum interest allowed by law." Pushee v. Johnson, 123 Fla. 305, 308, 166 South. Rep. 847.

It is pertinent to point out here an excerpt from the answer and counterclaim, *id est:*

"That said mortgagees did wilfully and knowingly violate the usury laws of the State of Florida by exacting and requiring of these defendants a sum of money as interest and bonus in excess of ten per cent per annum of the *actual* principal sum received by these defendants, in addition to requiring them to pay the principal sum of $5,000.00 herein due * * *."

We have italicized the word "actual."

This allegation the defendants undertook to prove (Tucker v. Fouts, 73 Fla. 1215, 76 South. Rep. 130) and they have not carried this burden.

"* * * The 'actual principal sum received' in a transaction such as we have now before the Court, is to be understood as referring to the actual amount of money which the lender turns over to the borrower when the note is signed and the loan completed." Wilson v. Conner, 106 Fla. 6, 9, 142 South. Rep. 606.

Much of the record is devoted to the necessity of work done by the attorney with reference to clearing title and to the reasonableness of the charge he made for his labors. This sheds little light on the real controversy. Two checks

of $2,500 each were delivered to the appellees and they paid the fee but there is no direct information that this was a subterfuge.

There is a dearth of evidence that any part of the disputed item was for any purpose other than we have related or that any of it reached the lender by deduction from the amount loaned or in any other fashion.

The decree is reversed with instructions to enter one for whatever amount appeared due before deductions were made for penalties.

Reversed.

So ordered.

TERRELL, C. J., and BUFORD, J., concur.

WHITFIELD, P. J., concurs in opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.