120 So.2d 637 (1960)
Frances WILLIAMSON and Phillip Markel, As Coexecutors of the Estate of Joseph Williamson, Deceased, and Melvin Goldstrom and Ruth Goldstrom, His Wife, Appellants,
v.
Joseph CLARK and Remilia Clark, His Wife, Appellees.
No. 1370.
District Court of Appeal of Florida. Second District.
May 25, 1960.
Martin F. Avery, Jr., of Berryhill, Leaird & Tedder, Fort Lauderdale, for appellants.
Myron H. Burnstein of Simons, Yeslow & Burnstein, Hollywood, for appellees.
SHANNON, Judge.
This is an appeal from the chancellor's final decree forfeiting plaintiffs' principal and interest in a mortgage foreclosure suit because of usury. This is the second time this case has been before this court. Williamson v. Clark, Fla.App. 1957, 98 So.2d 813.
The defendants wished to construct improvements on their realty and they responded to a solicitation by the Sunshine Mortgage Co., Inc., a mortgage broker. A short term construction loan was arranged through this broker with the plaintiffs in the amount of $14,870. The defendants executed a mortgage prepared by Sunshine Mortgage Co. and a mortgage note maturing in six months and bearing 10% interest on its face. The closing statement shows that Sunshine Mortgage Co. deducted $1,870 for "brokerage", and that $12,854.70 was to be held in an escrow account for construction purposes.
Upon execution of the mortgage and note, the $12,854.70 was not credited to any account for the defendants, in contrast to the usual construction loan. Although 10% interest was charged from the time of execution, *638 the funds were in no way distinguished, earmarked or set aside for the borrowers. Rather, the major part of these funds were retained by the lenders for their own use, and they were mingled with the other resources of these lenders. It was some twenty days after the execution of the papers that the first funds under this loan were deposited in an escrow account for the defendants. At this time, brokerage, title insurance and closing costs had already been deducted. There is ample evidence that these lenders and this mortgage broker had followed the same procedure with other loans in the past.
A second loan was necessary to complete the defendants' work, and it was negotiated through the same parties in a similar manner. This loan was in the sum of $3,300, with interest at 10% and it was to be repaid within two months. A brokerage commission of $500 was charged.
On the first loan Sunshine Mortgage Co. paid the lenders $743.50 and on the second loan $300 as an "inspection fee". According to the testimony of the president of Sunshine Mortgage Co., there was a preestablished agreement between these lenders and this mortgage broker by which the lenders received an additional 5% to 10% of the face amount for inspecting the construction as it progressed. Other witnesses testified that the actual inspections were cursory at best.
In the suit for foreclosure the chancellor found that interest in excess of 25% per annum had in fact been willfully and knowingly charged, subjecting the entire loan to forfeiture. He further found that while the plaintiffs charged interest at the rate of 10% per annum from the date of the execution of the notes, they retained the substantial majority of the principal and only remitted portions in installments from time to time; and yet, interest was not abated. In addition, the purported charge for "inspection fee" was found to be a mere cloak for the exaction of illegal interest. As a result, the actual interest charged upon the first note of April 7, 1956, amounted to 34.08%, and upon the second note, dated September 6, 1956, it amounted to 141.50%. In the final decree the chancellor concluded that the defendants had sustained the burden of proving their affirmative defense of usury by a preponderance of the evidence.
Implied in the final decree is the finding that the Sunshine Mortgage Co. was the agent of the lenders in these transactions. The factual situation outlined above amply supports such an implication, and the chancellor's conclusion that the lenders willfully and knowingly subjected the entire sums loaned to forfeiture under § 687.07, Florida Statutes, 1955, F.S.A.
Appellants have cited many cases, particularly Pushee v. Johnson, 1936, 123 Fla. 305, 166 So. 847, 105 A.L.R. 789. There the borrower and a mortgage broker made a separate agreement by which the borrower agreed to give the broker a flat 10% of the principal as bonus if the broker could find someone to lend the money. The broker found a lender, but he had to agree to split his bonus with the lender. The Supreme Court held that this was not usury because splitting the bonus with the lender did not increase the interest borrower would have to pay and because there was no proof of agency between the lender and the broker. Justice Buford, speaking for the court, clearly pointed out that if agency had been supported by the record, the situation would have been different, saying 166 So. at page 850:
"The facts in this case differentiated also from those cases where the record has shown that the person purporting to procure the loan was an officer or agent of the lender or stood in such relation to the lender as to control the actions of the lender in regard to the loan. In such case the officer, agent, or controlling factor of the lender cannot be divorced from the identity of the lender, and therefore the action of such officer, agent, or representative *639 is in law the action of the lender, and the lender will be held responsible and not be allowed to take advantage of the subterfuge of its officer, agent, or representative."
The instant case is therefore distinguished from the Pushee case because the evidence in this case shows that, in soliciting loans for the lenders, and by virtue of the agreements concerning the escrow account and the inspection fees, the mortgage broker was in fact the agent of the lenders. See Speier v. Monnah Park Block Co., Fla. 1955, 84 So.2d 697; Stoutamire v. North Florida Loan Co., 1943, 152 Fla. 321, 11 So.2d 570. The facts here are also different from those in the cases of Shaffran v. Holness, Fla.App. 1958, 102 So.2d 35, and Silverstein v. Wakefield, Fla.App. 1959, 112 So.2d 406, cited by appellants, where the lenders received no portion of the brokerage commission or any other sums from the brokers, and where the evidence failed to establish agency between the brokers and the lenders.
In foreclosing, the lenders sought to enforce the mortgages as if the sums had been advanced when the notes were executed. However, the money borrowed under these loans was not readily available to the borrowers. It was advanced by installments when required to meet the bills of creditors. There is further evidence that the lenders delayed in making these advances and that the credit rating of the borrowers was thereby impaired. Needless to say, this was a device which would materially increase the interest rate, and the chancellor so found. As was said in Mindlin v. Davis, Fla. 1954, 74 So.2d 789, 793:
"* * * Thus a delay in making that payment amounts to a delay in the advancement of a substantial portion of the loan. Since time as well as amount of principal is a factor in the calculation of interest, it is evident that retention of a substantial portion of the loan without a corresponding abatement of interest on the amount retained has the effect of substantially increasing the per centum of interest on the actual amount advanced by the lenders and received by the borrowers, which is the significant amount contemplated by the statute. * * * It is not difficult to appreciate the effect of such a scheme and to recognize it as a device or contrivance for the exaction of usurious interest condemned by the statute. * * *."
We therefore conclude that the chancellor below was correct in declaring the loans usurious and forfeited.
Affirmed.
ALLEN, C.J., and LOVE, WILLIAM K., Associate Judge, concur.