305 So.2d 59 (1974)
FINANCIAL FEDERAL SAVINGS AND LOAN ASSOCIATION, Appellant,
v.
BURLEIGH HOUSE, INC., Appellee.
No. 73-1195.
District Court of Appeal of Florida, Third District.
November 12, 1974.
Rehearing Denied January 9, 1975.
*60 Sams, Anderson, Alper & Post, Sam Daniels, Miami, for appellant.
Lapidus & Hollander, Miami, for appellee.
Before PEARSON and HAVERFIELD, JJ., and CARROLL (Ret.), Associate Judge.
HAVERFIELD, Judge.
Defendant-appellant seeks review of an adverse final judgment awarding plaintiff-appellee $652,169.24 plus costs in this usury action.
In 1968, plaintiff-appellee, Burleigh House, Inc., the developer of a 360 unit highrise condominium building on Miami Beach, Florida was approached by the defendant-appellant, Financial Federal Savings and Loan Association (hereinafter referred to as Financial Federal), which offered both construction and permanent financing for the project. Initially the parties attempted to negotiate a single loan for both the construction and permanent financing of the building. However, this scheme presented recording and other difficulties and at the request of defendant Financial Federal, plaintiff applied for a construction loan in the total principal sum of $7,800,000 and deposited a stand-by fee of $39,000. On January 6, 1969 Financial Federal issued its commitment letter to consummate a loan in the principal amount of $7,800,000 at an interest rate of 8 1/2% per annum, 8% per annum during the construction period which originally covered a maximum period of 13 months from the date of execution of the mortgage. The letter further provided that the loan was to be made up of 360 individual mortgage loans totaling the aggregate sum of $7,800,000. Of this sum, $7,000,000 would be placed in a construction escrow fund and the remaining $800,000 would be held in reserve by Financial Federal for use in closing and disbursing on the individual condominium mortgage loans which would be assumed by qualified purchasers. Plaintiff signed the commitment letter and paid an additional $39,000 stand-by fee therefor. Prior to closing, plaintiff on February 18, 1969 sent to defendant Financial Federal a letter wherein it requested an extension of the construction period from 13 to 18 months. At the closing on February 26, 1969 plaintiff signed a mortgage and note which was prepared by defendant Financial Federal and which provided that plaintiff promised to pay Financial Federal $7,800,000 for an 18 month construction loan with the entire unpaid principal due and payable on September 1, 1970. The interest thereon was 8% per annum for the first 13 months beginning March 1, 1969, 8.5% per annum thereafter until September 1, 1970. Defendant Financial Federal also prepared on February 26, 1969 a construction loan agreement between itself, plaintiff, as owner, and the general contractor. This agreement reflected the construction of the building would take 18 months at an estimated sum of $7,000,000 which would be disbursed as the construction proceeded. Financial Federal charged plaintiff $390,000 as closing costs on the loan.
*61 Construction commenced in April 1969 and was still in progress on April 1, 1970. Nevertheless, over plaintiff's protests and despite the fact that as of April 1, 1970 less than half the funds were drawn out of the construction account, Financial Federal began charging the full interest on the $7,000,000. Effective September 1, 1970 when the 18 month note matured, plaintiff then executed 344[1] individual notes and mortgages for a term of 25 years for the permanent financing on the individual units. These mortgages were then assumed by the condominium purchasers. Plaintiff made the last payment of interest on the construction loan on September 30, 1970 and the construction mortgage was satisfied in December 1970. On September 25, 1972 plaintiff filed against the defendant Financial Federal a complaint seeking damages for usury wherein it alleged that Financial Federal had retained control over most of the $7,000,000 construction fund from which it had drawn only approximately $2,000,000 by April 1, 1970; nevertheless, Financial Federal charged plaintiff interest on the entire $7,00,000 resulting in an effective rate of interest in excess of 15% per annum. In response thereto, Financial Federal raised as a defense the Statute of Limitations and at trial contended that the 18 month construction loan and subsequent permanent mortgages in effect were one loan and, therefore, the $390,000 closing costs paid by the plaintiff should be spread over a 26 1/2 year period.[2] The cause proceeded to a non-jury trial at the conclusion of which the trial judge found inter alia: (1) that time as well as amount of principal is a factor in the calculation of interest and the retention of a substantial portion of a loan without a corresponding abatement of interest on the amount retained has the effect of substantially increasing the per centum of interest (Williamson v. Clark, Fla. App. 1960, 120 So.2d 637); (2) that Financial Federal over plaintiff's objections continued to allow interest to run on the undisbursed portion of the loan; (3) that the effective rate of interest on the 18 month construction loan was in excess of 15% and accountants for both parties so testified; (4) that defendant's actual expenses in closing were $66,812 and the balance of the $390,000 charged as closing costs actually was interest; (5) that the construction loan and the permanent mortgages were separate and distinct loans and the closing costs clearly, by agreement of the parties, were charges for the construction loan alone; (6) that plaintiff's suit was filed within the applicable two year Statute of Limitations period; and (7) that defendant was not exempt from Florida's usury laws. Thereupon, the trial judge entered judgment in favor of plaintiff in the sum of $652,169.24 plus costs. Defendant Financial Federal Appeals therefrom.
We first turned our attention to appellant's argument that the trial court erred in holding that the instant action was brought within the two year period of the applicable Statute of Limitations.
A borrower at a usurious interest is given a cause of action for the imposition of a penalty or forfeiture upon the occurrence of a payment, and it is from the date of such a payment the Statute of Limitations begins to run. Wenck v. Insurance Agents Finance Corp., Fla.App. 1958, 99 So.2d 883; Vance v. Florida Reduction Corporation, Fla.App. 1972, 263 So.2d 585. The trial judge found that plaintiff-appellee by check dated September 28, 1970 and received on September 30, 1970 made the last interest payment on the subject construction loan. The record contains sufficient competent evidence in support thereof and, therefore, we agree with the trial court that the instant suit being commenced on September 25, 1972 was prior to the time of the running of the Statute of Limitations, § 95.11(6) Fla. Stat., F.S.A.
*62 We next considered appellant's contention that the trial court erred in holding that at all times here material, Financial Federal Savings and Loan Association was not exempt from the usury penalties contained in the Florida Statutes, Chapter 687.
Hereunder, we find it necessary first to dispose of Financial Federal's argument that provisions of the new Savings Association Act [Fla. Stat. § 665.011 et seq.] effective June 2, 1969 are applicable to the instant suit.
The uncontradicted record shows that the subject mortgage and note were executed by the parties on February 26, 1969 and prior thereto, plaintiff had paid a $78,000 (one point) commitment fee. In addition, the record further reflects[3] that Financial Federal on May 4, 1969 and on June 2, 1969 had posted payments of interest of $214.56 and $104.01 respectively which were received from the plaintiff. The new Savings and Loan Act became effective on June 2, 1969 and Fla. Stat. § 665.53, F.S.A. grandfathered rights accruing, accrued or acquired prior to the effective date thereof. Thus, we hold that the case at bar is governed by the former Chapter 665, Fla.Stats. §§ 665.01 to 665.52.
Financial Federal further argues hereinunder that if it cannot rely on the legislative changes effective June 2, 1969, then it is exempt from the usury penalties by virtue of Fla. Stat. §§ 665.161 and 665.40. We cannot agree.
In Spinney v. Winter Park Building and Loan Association, 120 Fla. 453, 162 So. 899 (1935) the Florida Supreme Court flatly held that the usury exemption provided for by Fla. Stat. § 665.161 applies only to domestic associations and not to foreign associations such as the defendant Financial Federal. Fla. Stat. § 665.40 entitles Federal savings and loan associations to the same exemptions from taxation as provided by law for domestic associations, not from the usury statutes. Therefore, we conclude that the defendant in the case sub judice is not exempt from the usury statutes.
Defendant-appellant also alleges as error the trial court's holding that all costs deemed interest should only be computed over an eighteen month period.
The mortgage note of February 26, 1969 by its provisions clearly reflects that the term of the subject loan was 18 months and that the entire unpaid principal indebtedness would be due and payable on September 1, 1970. It is also apparent from an examination of the record that on February 26, 1970 the date of the closing, there was no definite agreement between the parties with respect to the permanent financing. Thus, this argument of appellant must fail as the record contains substantial competent evidence to support the finding of the trial judge that there were two separate and distinct loans  one for the construction and the other for the permanent financing.
For the fourth point on appeal, Financial Federal raises as error the finding and holding by the trial judge that $328,188 additional interest was charged.
Before disposition of the above issue, we note that the $328,188 figure appearing in the findings is a typographical error and should read $323,188.[4]
Hereunder, we first considered the trial judge's treatment of the $78,000 commitment fee as interest. A commitment fee is not a charge for the use of money but rather a purchase of the right to secure a loan of money by a prospective *63 borrower.[5] In other words, it is a consideration for the lender's setting aside or earmarking funds which are committed to be loaned in the future. Thus, we hold that the trial judge erred in categorizing as interest the one point ($78,000) commitment fee which the record in the case sub judice amply supports as being reasonable in that a one point commitment fee is customary and the acceptable practice in the trade.
We then directed our attention to the determination of the trial judge with respect to the four points ($312,000) charged as closing costs.
It is well established that a borrower may agree with the lender to pay the actual and reasonable expenses of making a loan. Pushee v. Johnson, 123 Fla. 305, 166 So. 847 (1936). The trial judge found that the actual out-of-pocket expenses of the defendant-appellant Financial Federal were $66,812. An examination of the record on appeal reveals that Financial Federal's closing statement so reflects the above figure and further illustrates that the excess was considered by the defendant Financial Federal as net earnings. Therefore, we conclude that $245,188[6] of closing costs were unreasonable and in reality were interest charges.
We also have considered appellant's final point on appeal and find it to be lacking in merit. See Curtiss National Bank of Miami Springs v. Solomon, Fla.App. 1971, 243 So.2d 475.
For the reasons cited hereinabove, we hereby modify the concluding paragraph of the herein appealed judgment to read as follows:
Upon the above Findings of fact and conclusions of law, it is
Ordered and adjudged that the Plaintiff, Burleigh House, Inc., have and recover a judgment against the Defendant, Financial Federal Savings and Loan Association, in the amount of $574,169.24 plus costs as shall hereinafter be taxed, for which sums let execution issue.
Affirmed as modified.
NOTES
[1] 16 of the units were sold for cash.
[2] 18 month construction period plus the 25 year permanent financing period.
[3] Contrary to defendant's contention that prior to June 2, 1969 no interest had been paid by plaintiff.
[4] Nevertheless, there was no mathematical error as the record reflects that the trial judge based his computations on the $323,188 figure.
[5] See, Prather, Mortgage Loans and the Usury Laws, 16 Bus. Lawyer, 181 (1960) [Section of Corporation, Banking and Business Law of the A.B.A.].
[6] $312,000 (4 points closing costs)
 - 66,812 (actual expenses)
 ________
 $245,188