394 So.2d 1033 (1981)
A.N. ABRAMOWITZ, Appellant,
v.
BARNETT BANK OF WEST ORLANDO and John L. Maynard, Appellees.
No. 79-97/T4-367.
District Court of Appeal of Florida, Fifth District.
February 4, 1981.
Rehearing Denied March 10, 1981.
*1034 Darryl M. Bloodworth, Orlando, for appellant.
C. Brent McCaghren, Winter Park, for appellee, Barnett Bank of West Orlando.
No appearance for appellee, John L. Maynard.
SHARP, Judge.
Abramowitz appeals from a judgment denying him any relief in his suit against the Barnett Bank of West Orlando, appellee, in which he sought damages for an allegedly "usurious" loan. An earlier appeal[1] reversed a summary judgment entered in favor of the bank because there was a fact issue concerning whether or not a $4,000 "service fee" or "point" charge made at the mortgage loan closing was "interest" or whether it was in whole or in part repayment of a legitimate expense of the lender.
After a non-jury trial, the lower court concluded that the bank had incurred at least a $300 final inspection fee, several other inspection expenses during construction of the building, and unspecified expenses in obtaining other banks to participate in the loan; and that a sufficient amount of the $4,000 charge was attributable to the lender's bona fide "expenses," so as to remove from the transaction any possible "taint" of usury. It also found the bank had no intent to claim in excess of the maximum legal rate of interest. We reverse because there is not sufficient evidence in the record to sustain the trial court's findings.
The record established that Abramowitz filed three or more loan applications with the bank from February 1973 through October 1973. Originally he sought a construction loan to build a building to be leased to Ford Motor Company on land he owned near the John Young Parkway. C. Lee Maynard, president of the bank, wanted the loan for his bank, although the $300,000 to $400,000 loan requests considerably exceeded the bank's lending limits. In anticipation of making the loan, Maynard made "inspections" of the site and building being constructed, although Ford was financing the construction itself and the bank had made no loan commitment.
When the building was completed in November of 1973, the parties rushed into a mortgage loan closing without the benefit of a written loan commitment and without a carefully prepared loan closing statement. Maynard had verbally promised Abramowitz a $400,000 loan for one year, at 9% interest, with a 1% "point" or "service fee." The $4,000 "service fee" was shown on the closing statement as a "discount," but everyone agreed no "discount" was involved because the bank was not purchasing a mortgage loan from another party at less than face value.
The $4,000 service fee was deducted in full from the loan proceeds, and it was immediately received by the bank as income. During the one year term of this loan, Abramowitz was charged and he paid $36,347.78 in "interest." If the $4,000 charge was also "interest," Abramowitz paid more than $40,000 or 10% of his $400,000 loan in total interest charges.[2] If viewed as a "discount" loan where interest is paid in advance, the rate should be properly gauged on the amount of principal actually disbursed to the borrower plus legitimate expenses  ($396,000 or a somewhat *1035 larger figure if any part of the $4,000 were attributable to a legitimate expense of the lender.)[3]
Maynard testified that the $4,000 charge was meant to be a "service charge" or "points." He was the only mortgage loan officer at his bank, so he made "in-house" inspections of the construction of the building and a final inspection. He reported verbally to the bank's loan committee. He admitted that part of the $4,000 went to pay the bank's normal overhead expenses, such as salaries and utilities. Another expense attributed to this loan was Maynard's contacting other Barnett banks to obtain the participation of other lenders, and the preparation of loan participation agreements.
The other banker witnesses at trial testified that their banks normally imposed "service fees" or "points" on real estate loans in addition to interest, but they were careful not to exceed the usury limits when the two amounts were combined. Sometimes inspection fees were paid to architects or engineers for which the customer was charged; sometimes the inspections were done "in-house," and the borrower was charged a small amount, or was not charged at all.
A real estate appraiser testified he would have done a "final inspection" on this building for $300. If it had been a construction loan requiring approximately 5 separate inspections, his charges would have been $800.
A lender will not be allowed to impose any miscellaneous fees or service charges on the front end of a loan when that sum, added to the interest charged, exceeds the maximum legal rate of interest allowable. Ayvas v. Green, 57 So.2d 30 (Fla. 1952); Richter Jewelry Co. v. Schweinert, 125 Fla. 199, 169 So. 750 (1935); Williamson v. Clark, 120 So.2d 637 (Fla.2d DCA 1960). Application of such fees to pay the general overhead of a lender or the cost of participating out the loan are not sufficient to alter the characterization of these charges as interest. 91 C.J.S. Usury § 48 (1955).
It is also well established that a borrower can be charged the actual reasonable expenses of making a particular loan. Financial Federal Savings & Loan Assn. v. Burleigh House, Inc., 305 So.2d 59 (Fla.3d DCA 1974), cert. dismissed 336 So.2d 1145 (Fla. 1976), cert. denied, 492 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977); Mindlin v. Davis, 74 So.2d 789 (1954). However "bogus" charges for services not actually rendered will not be allowed to cloak the extraction of illegal interest. Williamson v. Clark, 120 So.2d 637 (Fla.2d DCA 1960).
The only basis to characterize the "service fee" in this case as something other than interest, is to allocate part of it as an "inspection" fee performed "in-house" by the bank's president. Such fees are usually paid to third-parties, and are documented on the mortgage loan closing statement. We are not prepared to say, however, that in all cases the inspection must be done by a third-person or that it must be documented on the closing statement, although that obviously is the better practice. The fact that Maynard himself performed the inspection does not flaw the charges although any charge for this "service" is inconsistent with his testimony that he did the inspection "in-house" to save the borrower money.
It is fundamental that the charges must be "reasonable." Financial Federal Savings & Loan v. Burleigh House; Abramowitz v. Barnett Bank of West Orlando, 356 So.2d 329 (Fla. 4th DCA), cert. denied, 364 So.2d 880 (1978). This loan was not a "construction" loan which requires more inspections to insure the lender's construction funds are being properly used as the building progresses. Rather, it was a loan on a completed building, and similar to a "takeout" loan for a permanent lender, only a final inspection fee is required. The only testimony in the record on this point established that $300 was the maximum a third party expert would have charged.
*1036 The conclusion thus follows inescapably that Abramowitz was charged in excess of 10% interest on this one-year loan.

"Service Fee" $ 4,000.00
Less "Reasonable Expenses" -300.00
 ___________
"Hidden Interest" $ 3,700.00
Principle of Loan $400,000.00
Less Prepaid Interest -3,700.00
 ___________
Actual Principal $396,300.00
Maximum legal amount of interest
collectible on this loan (10%) of
actual principal $ 39,630.00
Actual interest charged and billed 36,347.78
Plus "hidden interest" +3,700.00
 ___________
 $ 40,047.78
Amount of over-charge $ 40,047.78
 -39,630.00
 ___________
 $ 417.78

The lower court found there was no "corrupt" intent on the part of the bank to charge a usurious rate of interest because the bank did not deliberately charge more than 10%. It charged 9% on the loan plus 1% in points only. The difficulty here was that the 1% was taken up-front, resulting in a reduction in principal received, and an increase in the rate paid. Hamm v. St. Petersburg Bank & Trust Co., 379 So.2d 1300 (Fla.2d DCA 1980). The "intent" to exceed the legal rate of interest need not be to consciously decide to charge a borrower greater than the legal rate, when the lender consciously intends and does in fact make the charges which add up to usury. Ellis National Bank of Tallahassee v. Davis, 359 So.2d 466 (Fla. 1st DCA), cert. denied 365 So.2d 711 (Fla. 1978), cert. denied 440 U.S. 976, 99 S.Ct. 1547, 59 L.Ed.2d 796 (1979). See Sailboat Apt. Corp. v. Chase Manhattan Mortgage, 363 So.2d 564 (Fla.3d DCA 1978).
In this case, the closing statement showing a 1% point or service fee was prepared by the bank; and it calculated and billed the borrower interest throughout the year. No errors were shown to have occurred in the billing. In fact during 2 quarters, the lender billed on a 360 day year basis, which for a 10% or maximum rate loan, was usurious in and of itself. Ellis. We conclude the bank had the requisite intent to make the usurious charges. Sumner v. Investment Mortgage Co. of Florida, 332 So.2d 103 (Fla. 1st DCA 1976); Curtiss National Bank of Miami v. Solomon, 243 So.2d 475 (Fla.3d DCA 1971); River Hills, Inc. v. Edwards, 190 So.2d 415 (Fla.2d DCA 1966).
Accordingly, the judgment is reversed and this case is remanded for imposition of damages against the bank, pursuant to section 687.04 and other appropriate charges.
REVERSED and REMANDED.
DAUKSCH, C.J., concurs.
SHARP, G. KENDALL, Associate Judge, dissents with opinion.
SHARP, G. KENDALL, Associate Judge, dissenting.
The trial judge issued a memorandum supplementing his final judgment in which he found that after some difficulty in obtaining a loan from other lending institutions, appellant secured a loan from Barnett Bank at a total rate of 9% plus a 1% service fee. At the time, all banks were charging a similar fee. The lower court found that in many instances the service fee is nothing more than concealed interest. In this case, the trial judge found as a matter of fact the bank performed several functions other than those of a straight loan transaction. The president of the bank periodically and frequently investigated progress of the construction of the building on the property. The bank also had to find other participating banks to join in making the loan, as the loan exceeded this bank's lending authority. The court found that the bank was entitled to charge a service fee therewith.
Appellant contends that the $4,000.00 service fee was totally interest and was withheld from the principal loan, i.e. only $396,000.00 was disbursed, plus the fact that for approximately 1/2 of the term of the loan, interest was charged on a 360 day year versus 365 days. With all of these factors taken as true, the interest rate would be 10.1883%. See Hamm v. St. Petersburg Bank & Trust Co., 379 So.2d 1300 (Fla.2d DCA 1980).
Accepting the computation set forth above, the transaction would be facially *1037 usurious and tainted in the amount of $717.78. Even so, the trial judge found that the bank performed services to borrower in excess of that amount and could rightfully charge for those services.
The second element of usury is intent of the lender. Again, if we give the benefit to the appellant and find that the $4,000.00 service charge was all interest, it would then be the legal intent of the lender to make a 9% loan and a 1% service charge, still within the rate allowed by law.
In Dixon v. Sharp, 276 So.2d 817 (Fla. 1973), the Supreme Court spoke to the requisite intent required for a usurious transaction:
... (4) There must exist a corrupt intent to take more than the legal rate for the use of the money loaned.
In court in Dixon stressed that usury is largely a matter of intent, and is not fully determined by the fact that the lender actually receives more than the law permits, but is determined by the existence of a corrupt purpose in the lender's mind to get more than the legal interest for the money lent. Simple mathematical computation will not in itself determine necessary intent to make the debt unenforceable.
In this case there was sufficient evidence presented to the trial court to show services rendered by the bank which could be charged against the loan at least to the extent to remove the $717.78 taint of usury. The trial court further found that the bank had no other intent at the time of making the loan than to charge the stated amount of 9% plus a 1% service charge. The majority of this court is imposing its own judgment that no more than $300.00 should be allocated for reasonable expenses. They do not take into consideration any charge for securing participating lenders. It does not appear to me that $417.78 is an unreasonable charge for all services other than inspections so as to make the transaction usurious and imposes damages under section 687.04.
NOTES
[1] Abramowitz v. Barnett Bank of West Orlando, 356 So.2d 329 (Fla. 4th DCA), cert. denied, 364 So.2d 880 (1978).
[2] At the time the loan was consummated, the maximum interest rate chargeable to an individual was 10%. Section 687.03, Florida Statutes (1973). If the 10% rate was exceeded the bank would be subject to the penalties provided in section 687.04, Florida Statutes (1973).
[3] Crompton v. Smith, 140 Fla. 511, 192 So. 186 (1939); Hamm v. St. Petersburg Bank & Trust Company, 379 So.2d 1300 (Fla.2d DCA 1980).