Howard A. Zeller, J.
In this action to recover moneys, defendant has moved to dismiss the complaint for failure to state a cause of action. (CPLR 3211, subd. [a].) Plaintiff has moved for summary judgment in his favor for the amount requested in the complaint. (CPLR 3212.)
Early in 1969 plaintiff listed his one-family residence in the Town of Fenton, Broome County, New York with a licensed real estate broker for sale at the price of $23,900. As of May 9, 1969 an offer was received and accepted at $23,900 from Robert and Mary Peters conditioned upon their obtaining an F. H. A. mortgage on a 10% down payment or another means of financing.
*777 Upon the Peters’ application through defendant hank an F. H. A. commitment was issued June 13, 1969 on an P. H. A. valuation of $22,500 on the property and a maximum mortgage commitment of $21,000 for 20 years at 7%%. Defendant bank notified the Peters by letter dated June 18,1969 that the F. H. A. valuation of the property was $22,500, or $1,400 less than the purchase contract price of $23,900 and set forth three options:
‘ ‘ 1. You may negotiate with the seller for a price in line with the P. H. A. appraisal.
‘1 2. You may request to be released from the Contract as set forth in Paragraph 11 * * *. [Paragraph 11 is a no penalty release clause in the event of an P. H. A. valuation lower than the contract price.]
“ 3. You may disregard the P. H. A. appraisal and purchase at the present contracted price. ’ ’
The letter then states that the bank would consider an P. H. A. mortgage of $20,200, but noted that it “ appears the third option is not open to you as your down payment would be increased to $3,700.00 and you would have insufficient funds for closing costs.”
The contract already had been renegotiated and re-executed between the seller and the purchasers on June 17, 1969 at a purchase price of $22,500. Both the sale and the mortgage transactions were completed at the defendant bank in Binghamton on July 16,1969.
Pursuant to a prior notice, at this closing the purchasers were required to pay the lending defendant bank a flat fee of $202 or 1% (one point) of the mortgage principal and the plaintiff seller was assessed $1,010 or 5% (five points) of the mortgage principal.
It is the $1,010 point' payment which the plaintiff seller seeks to recover on the grounds (1) that there was no consideration therefor; (2) that the payment was made under a form of duress and coercion, and (3) that the payment as an addition to the maximum allowable 7%% interest rate on the mortgage under State law, constituted usury and voided seller’s agreement with defendant bank to pay it five points.
At the time plaintiff listed his property with the real estate broker it appears he was then advised that in the existing mortgage money market the assessment of points, in effect a discounting, was likely. The broker’s listing card, under remarks, states, “ Owner aware of points.”.
In the course of processing the prospective purchasers’ application for an P. H. A. mortgage the defendant bank advised the *778 applicants and the broker advised the seller that at that time six points, or a discount of 6% of the mortgage principal, would have to be assessed by the bank if it were to make this mortgage loan. The contract parties were advised that only one point could be imposed upon the purchasers and the remaining five points necessarily had to be paid by the seller if the transaction were to be completed. (See F. H. A. Administrative Rules for Section 203, Ch. XIII, §§ 1301, 1302, 1303; F. H. A. Mortgagee Handbook.)
Accordingly, on June 6, 1969 a printed form agreement was executed by plaintiff seller stating in essence that in consideration of the bank’s acceptance of the purchasers’ F. H. A. mortgage application the seller agreed to pay the bank a 5% discount fee, which fee could not 1 ‘ be imposed against or paid by the borrower ”. This agreement also provided for a renegotiation of the points should interest rates (on the market) change prior to the closing date.
Discounting of their particular paper commodity is common in various money markets in the financial world. The practice there of discounting the principal of mortgage paper at this time is a frequent and legally accepted one with mortgages insured, funded or traded by, through or under Federal agencies and their regulations. (See, e. g., Publ. L. 90-565, subd. [a], Oct. 12, 1968, 82 U. S. Stat. 1001, amdg. Publ. L. 90^301, § 4; U. S. Code, tit. 12, §§ 1706c, 1709, 1709-1, 1720.) Whether labeled points, discount or origination or service charges, the practice is “ common and permitted for F. H. A. insured loans by F. H. A. regulations.” (The Business Lawyer, Jan. 1967, “Usury And The Tight Mortgage Market ”, Hershman, M., p. 341.)
The mortgage here is such a mortgage, having been processed through the Federal Housing Administration under the mortgage insurance sections of the National Housing Act, as amended. With this type of mortgage the taking of points by the lender has the effect of making available to such mortgagers money which otherwise would be withheld from them in favor of 'different, shorter term and higher yield investments. (See, Business Conditions, Federal Reserve Bank of Chicago, 1969 Nov., p. 2.)
This type of mortgage paper was being discounted in the market at about 6% % during the time the mortgage application here was in process. An additional %% also then could be taken on F. H. A. mortgages. (See U. S. Code, tit. 12, § 1709-1; § 1720, subd. [b].) Thus, if a lending institution had advanced $10,000 in cash on an F. H. A. mortgage in that principal sum *779 in June, 1969 and soon thereafter wished to regain its cash position by sale of that mortgage on the market, the lender would have received only about $9,337.50, less expenses. The imposition of 6% points ($662.50) in this example would only equalize the cash position the lender was in after accepting this mortgage with the cash position the lender was in before accepting it.
Without point taking being permitted when necessary on Federally oriented mortgage and realty transactions it is obvious that the supply of money to finance such transactions would totally dry up, defeating many of the purposes of the National Housing Act. These purposes include making housing financing available to lower and average income groups, particularly in rural or semi-rural areas, where the investment risk may be good but private financing is not readily available for various reasons. (See, e.g., U. S. Code, tit. 12, §§ 1706c, 1715e, 1715k, 17151, 1715m, 1716, 1720.)
Consequently, and in furtherance of established purposes, the Housing Act of 1954 permitted amending F. H. A. Administrative Buies pertaining to private housing “ to remove the restrictions upon collection of fees and charges [including discounts] from all parties to a mortgage transaction with the exception of the mortgagor.” (F. H. A. Administrative Buies for section 203, ch. XIII, § 1301.) Section 1302 of the Administrative Buies does permit the mortgagee to charge the mortgagor a 1%, or one point, originating fee, and hence the one point assessment against the mortgagors here. (See, also, Franconia Vil. Co-op. v. Lincoln Sav. Bank, 22 A D 2d 402, 404-406.) But there is no Federal restriction upon collecting point charges from a non-mortgagor party to the transaction. In fact, the F. H. A. itself engages in discounting, or giving points, on its own paper or paper it holds, as revealed in an AP news release of an F. H. A. announcement published November 28, 1969 in the Syracuse Herald Journal, p. 2. (See, also, Lytle v. Federal Housing Administration, 280 F. Supp. 668 [U. S. Dist. Ct., S. D., Fla., 1968].)
The rate of interest and the supplemental 1% originating or service charge imposed on the mortgagors here were legal under Federal statute and regulations.. Further, the assessment of points against the seller also was, and is, a Federally recognized and legal practice. In one aspect, the payment of points by this seller in effect constituted a further reduction in the selling price of the property. (Cf., Mandelino v. Fribourg, 23 N Y 2d 145; Brown v. Robinson, 224 N. Y. 301.)
*780 The issue presented by plaintiff’s third cause of action is whether the point charge here nevertheless is violative of New York’s usury statutes. The answer is no since the State’s usury statutes expressly do not apply to F. H. A. mortgage and realty transactions.
In order to implement and complement the purposes and operation of the National Housing Act, many States, including New York, have passed legislation exempting transactions under the Housing Act from State laws governing banking and interest rates. In New York, subdivision 5 of section 5-501 of the General Obligations Law specifically states: “5. No law regulating the maximum rate of interest which m,ay be charged, taken or received shall apply to any loan or forbearance insured by the federal housing commissioner or for which a commitment to insure has been made by the federal housing commissioner ”.
The above subdivision was in full force and effect at all times herein pertinent. Usury does not exist in the framework of the facts in this case.
Plaintiff’s second cause of action alleges in essence that on the facts stated he was under unavoidable duress and coercion to pay the added amount of $1,010. This, position is untenable.
Other than personal considerations nothing prevented this plaintiff from taking a purchase-money mortgage himself. In fact this could Lave enhanced his ultimate return considerably, but the choice not to do so was his. (See Mandelino v. Fribourg, 23 N Y 2d 145, supra.)
There is no showing of any external force which compelled this seller to accept the conditional purchase offer and the attendant point charge agreement. Nor was the seller under any unavoidable compulsion to renegotiate the contract after receipt of the lower F. H. A. valuation. Since an alteration of a material contract term was involved the seller could have refused to proceed with impunity.
Concededly, this particular F. H. A. insured sale would have been lost. But nothing done by the purchasers or defendant bank prevented this seller from relisting his property on the market and awaiting a buyer who could secure a conventional mortgage. That mortgage money is in short supply for even conventional mortgages is a general and pervasive economic factor and might have left the premises on the market for some time with continuing costs of taxes, mortgage payments, maintenance and possibly minimum utility charges being paid by the prospective seller. However, this present economic condi *781 tion and these possible cost consequences cannot be laid at the door of this defendant bank.
If pressures impelled this seller to pursue completion of this particular sale, the origin of such pressures was. in his own personal affairs combined with the existing economic conditions.
Finally, plaintiff’s first cause of action asserts there was no consideration for his payment of $1,010 to defendant bank. Underlying this claim is the rationale that this private banking institution was under an obligation to lend money at 7%% on mortgages. This naive concept may easily be refuted. Suffice it to say that private banks are under no legal obligation to lend money to an individual for a particular purpose.
This seller wanted to complete this sale to these purchasers who had an F. H. A. commitment. The taking of an F. H. A. mortgage by defendant bank was necessary to seller’s objective of completing the transaction. The advancement of the mortgage money by the bank to the purchasers constituted sufficient consideration for the seller’s payment of $1,010. To the respective benefits of the purchasers, seller, and bank, plaintiff seller and defendant bank exchanged mutual promises and fulfilled them. (Rector, etc. of St. Mark’s Church v. Teed, 120 N. Y. 583.)
Defendant’s motion to dismiss the complaint for failure to state a cause of action shall be treated as a motion for summary judgment under CPLB 3211 (subd. [c]), to be disposed of in conjunction with plaintiff’s motion for summary judgment. (See, also, CPLB 3212, subd. [b].)
Before this court are defendant bank’s moving affidavit and exhibits and affidavits submitted by plaintiff. Judicial notice has been taken of laws, regulations, documents and publications referred to herein. (CPLB 4511.)
No triable issue of fact exists.
Plaintiff’s motion for summary judgment should be denied.
Defendant should be granted summary judgment dismissing the complaint upon the merits.