QUESTIONS: 1. Is a mortgage guarantee premium which is paid to the Federal Housing Administration or to a private mortgage insurer (MGIC) in connection with a home mortgage loan, no part of which is received by the lender, required to be treated as interest under the Florida Usury Law? 2. Should the amounts chargeable as interest in connection with a home mortgage loan be spread over the life of the loan, as stated in the mortgage loan agreement? 3. Are "points," or a discount, which are charged against the seller by the lender in connection with a home mortgage loan required to be treated as interest under the Florida Usury Law?
SUMMARY: Under Florida's usury law, s. 687.03, F.S., a mortgage guarantee premium which is paid to someone other than the lender in connection with a home mortgage loan is not required to be treated as interest. Any payments in money or property which are chargeable as interest, in addition to the regular rate, are to be spread over the stated term of the loan in computing the total interest charged by the lender. In both conventional and FHA/VA home mortgage loans, a lender may charge "points" or a discount to be paid by the seller without violating the usury statute even though, when added to the regular rate of interest charged the buyer-borrower, the interest received by the lender will exceed the rate allowable under the statute. However, if the lender charges points or a discount against the seller which are passed on to the buyer-borrower by the seller, the usury statute will be violated if it is found that the lender acted willfully and knowingly in charging the buyer-borrower, indirectly, an excessive rate of interest. Home mortgage loans made by building and loan associations are exempt from the usury statutes under s. 665.395, F.S. The "mortgage guarantee premium" to which your question refers is, apparently, the premium of one-half of one percent of the insured loan charged against the borrower by the Federal Housing Administration or mortgage insurer to provide an appropriate reserve. For somewhat similar reasons, lending institutions have required the payment of "points" by the seller in this type of mortgage loan — which, in effect, discounts the mortgage loan to the extent of the points required. This is entirely legal for FHA insured loans under federal regulations and is a frequent and regularly accepted practice in this type of financing. See Lord v. Marine Midland Trust Co., 306 N.Y.S.2d 82
(1969), in which the court said:
Whether labelled points, discount, or origination or service charges, the practice is "common and permitted for F.H.A. insured loans by F.H.A. regulations." (The Business Lawyer, January 1967, "Usury And The Tight Mortgage Market," Hirshman, M., p. 341.) It is also legal under many state laws which expressly exempt FHA/VA loans from the impact of their usury statutes, even though the points, if treated as interest, would result in a usurious interest rate. As shown in an appendix to an article in 24 University of Miami Law Review 642, 674, published in 1970, the states of Alabama, Arizona, Delaware, Georgia, Illinois, Indiana, Iowa, Kentucky, Louisiana, Michigan, Minnesota, Mississippi, New Jersey, New York, North Carolina, North Dakota, Pennsylvania, South Carolina, Tennessee, Vermont (up to 12 percent), Virginia, and West Virginia exempt this type of loan from their usury laws. (It does not appear whether the exemption is by virtue of statute or by judicial decision.) The article lists other states — California, Colorado, Hawaii, Mississippi, and Washington — which exempt state and national banks, or savings and loan associations, from the restrictions of their usury laws. Florida contains a similar exemption as to building and loan associations. Section 665.395, F.S. See also s. 665.511, id., providing that federal savings or savings and loan associations shall possess all the powers, privileges, and immunities and exemptions provided by Florida law for "associations organized under the laws of this state" except as otherwise provided by federal laws or regulations. Our usury law, s. 687.03, F.S., as amended by Ch. 74-232, Laws of Florida, provides in pertinent part that (1) It shall be usury and unlawful for any person . . . to reserve, charge or take for any loan . . . except upon an obligation of a corporation, a rate of interest greater than 10 percent per annum, either directly or indirectly, by way of commission for advances, discounts, exchange, or by way of any contract, contrivance or device whatever, whereby the debtor is required or obligated to pay a sum of money greater than the actual principal sum received, together with interest at the rate of 10 percent . . . . (2) For the purpose of this chapter, the rate of interest on any loan of money shall be determined and computed upon the assumption that the debt will be paid according to the agreed terms whether or not said loan is paid or collected by court action prior to the term of said loan, and any payments or property charged, reserved, or taken as an advance or forbearance which are in the nature of and taken into account in the calculation of interest, shall be valued as of the date received and shall be spread over the stated term of the loan for the purpose of determining the rate of interest. . . . (Emphasis supplied.) It is against this background that your questions must be decided. AS TO QUESTION 1: I have no difficulty in concluding that the cost of mortgage insurance, even though required to be paid by the borrower, is not per se "interest" within the meaning and intent of our usury statute. As noted in Mindlin v. Davis, 74 So.2d 789, 792 (Fla. 1954), It is settled in this state that the borrower may legitimately agree with the lender to pay actual reasonable expenses of examining and appraising security offered for a loan as well as the costs of closing the transaction, even
though such payments, when added to the interest contracted for, exceed the maximum interest allowed by law. Accord: Pushee v. Johnson, 166 So. 847 (Fla. 1936), cited in an annotation in 91 ALR2d 1344, 1350, on the subject of "Usury: Requiring Borrower To Pay For Insurance As Condition Of Loan" in support of the general rule that . . . the requirement by a lender, whether an insurance company or otherwise, that the borrower should, as a condition for obtaining the loan, take out and pay premiums on a policy of insurance, and assign it to the lender as additional security for the loan, or that the borrower should pay for the expenses, other than premiums, incurred by the lender in procuring or maintaining such insurance, does not, though making the cost of the loan exceed the highest legal interest, necessarily constitute usury where there is no showing that the requirement is intended to be, or is exacted as, a mere shift or device to cover usury. Your first question is, therefore, answered in the negative. AS TO QUESTION 2: The provisions of s. 687.03, F.S., quoted above, as amended in 1974, make clear that any money or property received by the lender which is chargeable as interest, in addition to the regular interest rate, may be "spread over" the stated term of the loan in computing the rate of interest per annum "whether or not said loan is paid or collected by court action prior to the term of said loan." Accordingly, your second question is answered in the affirmative. AS TO QUESTION 3: There is no clear answer to this question under present Florida statutory law and judicial decisions. The courts of two states, New York and New Jersey, have considered somewhat similar questions. In Lord v. Marine Midland Trust Co., 306 N.Y.S.2d 82 (Supreme Court, Special Term, Broome County 1969), the court ruled that points required to be paid by the seller in connection with an FHA mortgage loan were nonusurious. The court noted that the assessment of points against the seller is "a federally recognized and legal practice" and is, in one aspect, "a further reduction in the selling price of the property." It was noted, also, that the New York law expressly exempts FHA/VA loans from its usury statute. In Yasner v. Commercial Mortgage Co., 295 A.2d 209 (Essex County District Court, N.J. 1972), the court ruled that a loan agreement compelling the payment of a placement fee by the seller in addition to the interest agreed to be paid by the purchaser was a usurious exaction on the part of the lender in order to permit it to circumvent the usury statute. As against the contention that there was no loan to the seller from the lender and thus no exaction of usurious interest, the court said: This theory presupposes that any moneys the lender receives by way of return must of necessity come from the borrower himself. This court flatly rejects that construction; it matters not from whence the lender accepts his return. The court held the transaction nonusurious, however, because of the New Jersey law exempting FHA/VA loans from the state's usury statutes. In Florida, it was ruled early on that the purpose of our usury statute is to protect the borrower from exactions which his necessitous situation compels him to accept when imposed upon him by the lender. In Pushee v. Johnson, 166 So. 847 (Fla. 1936), the court upheld an agreement between the lender and a mortgage broker whereby the broker paid to the lender one-half of the commission (10 percent) agreed upon between the broker and the borrower for finding the loan. The court said that the question was whether the acceptance of a portion of the commission by the lender, without placing any further pecuniary burden on the borrower, constituted a violation of our usury statutes and made the loan such as to cause the lender to be required to submit to the forfeiture provided by the usury statute. In ruling that it did not, the court quoted with approval an early Wisconsin case, McArthur v. Schenck,31 Wis. 673, 11 Am. Rep. 643, as follows: The prohibition of all such [usury] laws, and of our law, has been and is against the lender's bargaining for, reserving or taking usury from the borrower. We say from the borrower, not because the statute uses these exact words or in terms so enacts the prohibition, but because such is the evident intent and purpose of the statute. . . . (Emphasis supplied.) The court noted also that, as construed in Benson v. First Trust Savings Bank, 134 So. 493, 496, 142 So. 887,145 So. 182, the Florida usury statute . . . carries the thought and the holding that the lender must willfully and knowingly charge to or accept from the borrower the excess constituting usurious interest, but the statute will not apply where the excess is received from one other than the borrower and creates no additional or more burdensome obligation on the borrower than if the excess had not been received from such third party. (Emphasis supplied.) Finally, the court said that There are cases which appear to hold to the contrary of what we are holding here, but it seems to us that the whole purpose of our statute is to protect the borrower from the grasping devices of the lender, and, where the transaction is such that the lender receives compensation above the lawful interest charged, but by doing so places no greater burden on the borrower than would be upon him otherwise, the statute does not apply . . . . There has been no change in the usury statute in any respect here relevant since these cases were decided. See s. 6938, CGL 1927, carried forward into the Florida Statutes as s. 687.03, F.S. Nor has the court receded from or modified its interpretation of our usury statute as made in Pushee, supra. It is noteworthy also that in Dixon v. Sharp,276 So.2d 817 (Fla. 1973), the court ruled that the lender must knowingly and willfully charge or accept more than the amount of interest prohibited in order to work a forfeiture under the statute, and reaffirmed the principle that the purpose of statutes prohibiting usury is to bind the power of creditors over necessitous debtors and prevent them from extorting harsh and undue terms in the making of loans, citing Chandler v. Kendrick,146 So. 551 (Fla. 1933), which was also relied upon in Pushee. In sum: Under the decisions of our Florida courts, the purpose of our usury statute is to protect necessitous debtors; and it seems clear that the Florida Supreme Court would not follow the decision of the New Jersey court in Yasner, supra, that any payment made to the lender in excess of the interest rate authorized by law, from whatever source, is a violation of the usury law. See Pushee v. Johnson, supra; cf. Dixon v. Sharp, supra. Accordingly, in view of the present crisis in the home building industy — which, according to a spokesman for the Florida Home Builders Association, is on the verge of collapse unless immediate steps are taken to alleviate the situation — it is my opinion that, pending legislative or judicial clarification, a lender may validly charge a seller reasonable points or a discount in connection with a home mortgage loan, even though if construed as interest the "points" or discount would exceed the authorized annual interest rate under our usury statute. However, it should be made clear that the lender who charges points or requires a discount from a seller is not in exactly the same position as was the lender who shared in the mortgage broker's "finder's fee" in the Pushee case; nor is his situation the same as that of third parties to whom the seller or borrower, as the case may be, is required by the lender to pay various costs of the mortgage transaction. See Mindlin v. Davis, supra. It is inescapable that a seller may be able to pass on to the buyer-borrower all or a portion of the points or the discounts charged against him by the lender, simply by increasing proportionately the purchase price of the property; and if a lender knowingly and willfully charges the seller points or a discount, knowing that the seller has passed or will pass the charge on to the buyer-borrower, and if the amounts so charged will, when added to the regular rate of interest payable by the borrower, exceed the lawful rate, it seems clear that the lender may be found to have violated the usury statute of this state. In this situation, the lender will have "willfully and knowingly charge[d] to or accept[ed] from the borrower the excess constituting usurious interest," within the rule of Benson and other cases cited in Pushee, supra, and quoted above, even though the charge was made indirectly rather than directly. Thus, points or a discount which, if paid by the buyer-borrower, would be usurious, may be safely charged by the lender against the seller only if the lender has some assurance from the seller (and makes sure that he will be in a position to prove, if necessary) that the charges in question will not be passed on to the buyer-borrower by the seller. While it will, of course, be impossible to plumb the mind of the seller in order to determine whether he intends to pass the points on to the buyer, there should be facts and circumstances in any given situation which will indicate to the lender (and to the court, should the loan be challenged as usurious) whether or not the buyer-borrower will be required to carry the added burden of the points charged by the lender against the seller. For example, if the purchase price finally agreed upon between the parties is significantly greater (and, perhaps, roughly equivalent to the points or discount which the lender proposes to charge the seller) than the appraised value (or, if not appraised, the initial asking price), a lender would be well advised to take a second look at the proposed transaction and to decline to make the loan unless it is shown to his satisfaction (and by proof that would be persuasive if not conclusive evidence in court) that the increase was based on factors other than the desire to pass on the points or discount to the buyer. In the case of FHA/VA home mortgage loans, the lender and the parties must comply with the interest rates fixed for such loans, as well as the federal rules and regulations prescribing the conditions under which such loans may be made, including a requirement that there be an appraisal and a limitation upon the points that may be charged against the buyer-borrower. The fact that so many states have relaxed the impact of their usury laws upon FHA/VA insured homemortgage loans indicates that the restrictions imposed by the federal regulations may be expected to adequately protect the buyer-borrower from excessive interest charges. Nevertheless, the legislature of this state has not as yet seen fit to expressly exempt such loans from our usury statute; and, until it does — or unless and until it should be judicially held to the contrary — the conclusions reached above as to conventional home mortgage loans are equally applicable to FHA/VA insured home mortgage loans. However, as noted above, building and loan associations are expressly exempt under s. 665.395, F.S., from the interest rate limitation prescribed by our usury statute. Thus, the caveat expressed in the foregoing remarks would not be applicable to home mortgage loans made by such institutions.